**AQUAMARINE OPERATORS,**
**Appellant,**

**v.**

**Ida E. DOWNER, Appellee.**

**No. C14–84–635CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 28, 1985.

Rehearing Denied April 4, 1985.

Terry P. Ayre, Jeffrey R. Bale, Joseph H. Finkel, Brown, Sims & Ayre, Houston, for appellant.

Mike Kerensky, John O'Quinn, John O'Quinn & Associates, Frank M. Staggs, Jr., O'Quinn & Hagans, Houston, for appellee.

Before JUNELL, ROBERTSON and CANNON, JJ.

## OPINION

ROBERTSON, Justice.

Aquamarine Operators, Inc. appeals a judgment for $1,685,988.00 entered after the trial court struck its pleadings as a discovery sanction. The controlling issue on appeal is whether those sanctions were proper. After a careful review of the record, we believe the court's action was erroneous and accordingly reverse and remand the cause.

The facts forming the basis of this lawsuit can be briefly summarized. Appellee's husband died while working as a seaman on appellant's vessel. Appellee brought a wrongful death action under the Jones Act and general maritime law. After appellant's answer to this pleading was filed, appellee issued notice to take oral depositions of eight people. These people were scheduled for deposition three times, twice by notice and once by agreement, but appellant notified appellee on two of those occasions that they were unable to attend because their vessel was "out at sea." On the day following the last of these two notices, appellee filed a motion for sanctions and a hearing on that motion was set. Only the appellee appeared at that setting and the judge thereafter entered an order striking appellant's answer. The trial court subsequently refused to set aside his order granting sanctions, and after a jury trial was held solely on the issue of damages, judgment was entered against appellant.

While appellant raises six points of error challenging the judgment, we believe the first two points are dispositive of the appeal. Appellant first contends that the trial court erred as a matter of law in striking its answer because Rule 215a, Texas Rules of Civil Procedure, which contained discovery sanctions applicable at that time, permitted the trial judge to strike a party's pleadings only when a "party or an officer or managing agent" failed to comply with a discovery request. Thus, it argues, since the witnesses here noticed for deposition were not parties, this particular sanction was not an available option. We agree.

■ To properly address this issue, we first turn to the then applicable language of rule 215a.

> Failure of Party or Witness to Attend. If a *party or an officer or managing agent of a party*, except for good cause shown, fails to appear before the officer who is to take his oral deposition or his answers to written questions or cross-questions under these rules, after proper service of subpoena or notice as provided in Rule 201, the court in which the action is pending on motion and notice may strike out all or any part of the pleading of that party, or dismiss the action or proceeding or any part thereof, or direct that such party shall not be permitted to present his grounds for relief or his defense, or enter a judgment by default against that party, or make such other order with respect thereto as may be just.
>
> Any *witness* who, except for good cause shown, fails to appear before the officer who is to take his oral deposition or answers to written questions or cross-questions under these rules, after proper service of subpoena, may be punished as for contempt of the court in which the action is pending or of the district court in the district in which such deposition or answers are to be taken, and an attachment may issue out of such court for such witness, as in ordinary civil cases. (Emphasis added.)

TEX.R.CIV.P. 215a(c) (Vernon 1976). This rule obviously makes a distinction between parties and witnesses. *See Barrientos v. Texas Employers' Insurance Association,* 507 S.W.2d 900, 903 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.). It therefore becomes our task to determine whether the trial court had sufficient information before it to decide if the requested deponents fell within the "party" category. We are guided in this determination by the principle that the movant, here the appellee, had

the burden of proof before the trial court. *See Mobile, Inc. v. Cone,* 457 S.W.2d 175, 176 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.).

■ The record before us reveals that only certain pertinent information was before the trial court at the time the sanctions were granted. It included a notice of deposition filed May 4, 1983, requesting the appearance of the following persons with no further designation of their status:

1. William Balou;
2. Chester P. Dalfrey;
3. Ross Pearce;
4. Clifford Crider;
5. Ernest Richardson;
6. Donald Doswell;
7. The supervisor of Chester P. Dalfrey;
8. Custodian of the entire personnel file for Edward Pierce Downer.

A second notice contained an identical listing. The actual motion for sanctions itself was the only document indicating that any of the requested deponents were anything but crew members. This motion, sworn to by appellee's attorney, referred to "the entire crew as well as the captain's supervisor and a member of Aquamarine Operators to discuss the fringe benefit program for the Decedent." At the time the sanctions were granted the requested deponents had not been further identified in any of the papers before the court.

It is also noteworthy that there evidently was not a "hearing" on the motion for sanctions. The "Notice of Submission" notified appellant that the motion would be heard on July 18, 1983, "without the necessity of an oral hearing *unless one is requested by you.*" (Emphasis supplied). While this hearing was reset to August 22, neither appellant nor his counsel appeared on that date (as will be shown later on) and neither the order granting sanctions nor the docket sheet reflects the court heard any evidence.

Even stretching these listings and sworn statements to the point of implications, we do not believe the trial court had sufficient evidence before it to characterize any of the noticed persons as "a party or an officer or managing agent of a party" as required by the rule. The crew obviously does not fit into any of those categories. While the supervisor of Chester Dalfrey, the captain,[1] might be considered a managing agent of the *vessel,* this bears no relationship whatsoever to the required category, that is, a managing agent of the *party,* Aquamarine Operators.[2] *See Davis v. Sea Fresh Fisheries, Inc.,* 1983 A.M.C. 1165 (W.D.Wash.1981). The noticing of the custodian of records, alternatively referred to as a member of Aquamarine Operators, is equally ambiguous. Such a designee need not, by definition or implication, be an official of the corporate party. Under this record it was not possible for the court to determine that any of these people were parties, or officers or managing agents of the party defendant, Aquamarine Operators. Consequently the court could not, as a matter of law, strike appellant's pleadings under the dictates of rule 215a.

While we believe that the trial court did not have the authority to impose this sanction, of equal importance in our decision is the issue of whether that action constituted an abuse of discretion. *See Bass v. Duffey,* 620 S.W.2d 847, 849 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). We are aware of the recent judicial trend of taking firmer action for discovery abuse. *See, e.g.,* Kilgarlin & Jackson, *Sanctions for Discovery Abuse Under New Rule 215,* 15 St. Mary's L.J. 767 (1984). Although we believe the facts here did not present an appropriate case for the extreme discovery

---

1. Although Chester Dalfrey was eventually identified as the captain, the trial court record did not specifically contain an identification of him as such at the time the sanctions were granted.

2. In her brief, appellee states that the notice of deposition required appellant to produce "its President as the supervisor of Captain Dalfrey." The record before us indicates that the record available to the trial court at the hearing on sanctions is devoid of any information indicating that the president of Aquamarine Operators had been noticed.

sanction imposed, in light of the trend to the contrary, we will carefully detail the series of events leading to the trial court's granting of the motion for sanctions.

Plaintiff-appellee filed her original petition on January 27, 1983. On May 4, 1983, she filed the first notice of intention to take depositions on June 1, 1983. On June 1, appellant's attorney called appellee's attorney and informed him that he had just been notified that the crew was out at sea and therefore was unavailable for the deposition. The two attorneys then informally agreed to reset the depositions for June 22, 1983. On June 21, appellant's attorney told appellee's attorney that the crew was again at sea and would not be able to attend the deposition scheduled for the next day. Appellant's attorney suggested that the crew would be able to attend a July 5 deposition in Houston, and appellee's attorney thereafter noticed a deposition for that date and location.

There is some dispute as to the next turn of events. In a response to the motion for sanctions, appellant's attorney stated under oath that on July 1, he contacted counsel for appellee and requested that the depositions be taken in New Iberia, Louisiana, where the crew's vessel was docked. The crew was unable to go to Houston as scheduled because a skeleton crew had to remain with the vessel at all times. He further stated that appellant chartered a plane and informed appellee's counsel that they would fly him to New Iberia at their expense. On the morning of July 5, appellant's counsel called counsel for appellee to give him directions to the airport where the chartered airplane was waiting. He was informed by the secretary that appellee's attorney was out of the office. That afternoon appellant's attorney was notified that appellee's attorney refused to make the trip. In an *unsworn* letter to the court (in answer to appellant's response to the motion for sanctions), appellee's attorney asserted that appellant's recitation of the events of July 1 was "blatently false." He stated that appellant's attorney did not contact him at all on July 1, and in fact did not call him until 10:00 a.m. on July 5, one hour

after the deposition was to begin. Appellee's attorney told the court that only at this point did counsel offer to fly him to New Iberia, which request he did refuse because he was preferentially set for trial the next day.

The next day, July 6, appellee filed her motion for sanctions, and the hearing thereon was set for July 18, 1983. Appellant responded to this motion, detailing the above-described events. Appellee responded to this with the unsworn letter, pointing out inaccuracies in appellant's allegations. The trial court had all of this information before it at the time it signed the order granting the sanctions on August 22.

While this summarization completes the chronological facts leading to the granting of sanctions, several other factors significant to the court's decision are also presented in the record. First, appellant's attorney had a number of reasons for not appearing at the hearing. Hurricane Alicia came through on August 18, and appellant's attorney, who lives in La Porte, suffered storm damage to his residence as a result thereof. Appellant's attorney was also scheduled for trial on August 22. Finally, and perhaps most importantly, appellant's counsel's secretary filed an affidavit indicating that she had been told the hearing was scheduled for *September 6*, 1983. She stated that the clerk of the trial court called her to confirm the availability of the August 22 hearing date. The secretary checked counsel's calendar and found a conflict on that date. She called the clerk and notified her of the conflict, at which time they agreed on the September 6 date. The clerk said she would call appellee's counsel to confirm that date with him, and that she would call the secretary back only if there was a problem. The clerk did not return the call, so she assumed the September 6 setting was correct. These scheduling problems certainly are of some value in the decision to strike pleadings.

Appellant points out further facts for our consideration. First, the very nature of its business is such that it is difficult to

produce the crew for deposition. When the crew ships out, they often spend substantial periods of time offshore. The crew would often have to return to an offshore oil patch shortly after arriving onshore. Furthermore, because of the currently depressed offshore oil industry, appellant suggested that they found it necessary to take work whenever they could find it, even if before a scheduled deposition. Secondly, none of the deponents resided in Texas, making it difficult to attend a Houston deposition.

We also note that appellee apparently never sought *only* the harsh sanction imposed. In the motion, appellee's prayer was in the alternative—either strike the pleadings and enter default judgment *or* award attorney's fees for the three days lost. In appellee's letter (referenced above) to the court, appellee reasserted the request for sanctions "and in addition, would at least ask this Court to enter an Order compelling the Defendant to produce its crew within thirty (30) days" for depositions.

The very timetable of this cause indicates a factor for consideration regarding abuse of discovery. The cause had been on file less than eight months, and the motion for sanctions was granted less than four months after the first notice of deposition. Although the motion itself was on file for over a month when the motion was granted, appellee's attorney was on vacation from July 28 until August 18. In a sworn affidavit, an attorney from appellant's firm said that he spoke with appellee's attorney before he left on vacation in an attempt to reschedule the depositions before the sanction hearing. Since such rescheduling was impossible, appellant's attorney asked him to pass the hearing on the motion for sanctions and promised that he would produce the crew upon counsel's return. Appellee's attorney said that he would not pass, but that he would not request the court to strike appellant's pleadings but rather would only ask for an order compelling the crew members' appearance.

Under this state of the record, we cannot hold that the trial court did not abuse its discretion. While the depositions were scheduled twice formally, and once by agreement, this is not outrageous in light of the explained nature of appellant's work. The appellate record does not indicate that appellant's crew ever actually refused to appear, but rather evidences that appellant requested reschedulings due to their unavailability. Although there are some conflicts in the various versions of the facts, these conflicts, along with the short time between the first scheduled deposition and the granting of sanctions, clearly presented a vague enough situation that the judge should not have resorted to striking appellant's pleadings. Though we certainly can understand the court's apparent irritation at appellant's counsel's failure to appear at the sanctions hearing, the subsequent response outlining his reasons for non-appearance further fortifies our belief that the court abused its discretion.

Appellee places significant reliance on *Wiley v. Browning*, 670 S.W.2d 729 (Tex. App.—Tyler 1984, no writ). We believe this reliance is misplaced. In that case a party-defendant to a lawsuit failed to appear for a noticed deposition. After this single absence, the plaintiff filed a motion for sanctions. A hearing was held, and the trial court granted the motion and defaulted the defendant. The Tyler court found the trial court had not abused its discretion. We do not find the decision controlling here because we believe there are several distinguishing factors. First, the defendant there never notified the plaintiffs that he would not be present. Secondly, he did not offer to appear at a later date for his deposition, and when questioned by the court, the defendant stated "I let my wife handle all the business she could, and I didn't want to be bothered with it." Finally, the parties had informally agreed to depositions on "several" prior occasions, but none of these had resulted in the taking of a deposition. This is easily contrasted with this case, where appellant, although cancelling depositions, made efforts to reschedule them each time. Further-

more, the cancellations did not appear to be deliberate evasions, but rather were a result of appellant's work conditions.

Appellee also relies upon the recent case of *City of Houston v. Arney*, 680 S.W.2d 867 (Tex.App.—Houston [1st Dist.] 1984, no writ) where the court approved the granting of sanctions by striking the defendant's answer and entering default judgment. The facts of that case do not, however, compare with the facts of this case. In *Arney*, answers to interrogatories were due six months prior to the striking of defendant's answer. During this time an order was issued compelling answers, which order was completely ignored by the defendant. No action was taken by the defendant until plaintiff's motion for sanctions was filed. This is easily contrasted with appellant's repeated attempts to reschedule depositions in the four month period between the first notice and the order striking its pleadings.

We find comfort in the language of the United States Supreme Court in *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976):

> [T]he most severe in the spectrum of sanctions [dismissal or default] provided by statute or rule must be available to the district court *in appropriate cases,* not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. (Emphasis added).

The facts of this case simply do not, in our opinion, show this to be an appropriate case to impose the ultimate sanction of striking the pleadings and entering default judgment.

In conclusion, we hold the granting of the discovery sanctions constituted both an error at law and an abuse of discretion. Having thus disposed of appellant's first two points, it is unnecessary to discuss the remaining points.

The judgment is reversed and the cause remanded with instructions to reinstate appellant's answer.