Hanzlicek 






AFFIRMED
MAY 17, 1990

NO. 10-89-217-CR
Trial Court
# 890513 CR1
IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

BENNIE S. HANZLICEK,
Â Â Â Appellant
v.

THE STATE OF TEXAS,
Â Â Â Appellee

* * * * * * * * * * * * *

 From County Court at Law
McLennan County, Texas

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
In a trial before the court, Bennie S. Hanzlicek was found
guilty of driving while intoxicated and assessed punishment at
sixty days in the county jail, probated for six months. The court
also assessed Hanzlicek a fine of $1,000, probated to $100. 
Hanzlicek appeals, complaining in a single point of error that
there was insufficient evidence to support his conviction. We will
overrule the point of error and affirm the judgment.
Waco police officer Lionel McGee testified that he was on
patrol at 4:30 A.M. on January 30, 1989, when he discovered
Hanzlicek's automobile partially up on the curb of the street. 
Although the car was motionless, its motor was running and its
lights were shining. Upon approaching the car, McGee found
Hanzlicek asleep, slumped behind the steering wheel. McGee
testified that the car's transmission was in "drive," and that the
car was not moving only because Hanzlicek's foot was positioned on
the brake. After waking him up, McGee asked Hanzlicek to step out
of the car. Displaying conspicuous signs of intoxication,
Hanzlicek told the officer that he was trying to go home and was
waiting for a friend to "come back and pick him up." No one else
was seen in or near the car, and McGee testified that he did not
know how long the car had been there before he arrived. McGee also
stated that he did not know how long Hanzlicek had been intoxicated
or how long Hanzlicek had been in the car.
At trial, the State had the burden to prove that Hanzlicek (1)
was intoxicated, (2) while driving or operating a motor vehicle (3)
in a public place. See TEX. REV. CIV. STAT. ANN. art. 6701l-1(b)
(Vernon Supp. 1990). Hanzlicek asserts that although there was
direct evidence that he was intoxicated, there was insufficient
evidence showing that he drove or operated the car while he was
intoxicated. 
The standard of review on a sufficiency-of-the-evidence point
is whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). 
Hanzlicek relies on Reddie v. State, 736 S.W.2d 923 (Tex. App.--San
Antonio 1987, pet. ref'd) and Ballard v. State, 757 S.W.2d 389
(Tex. App.--Houston [1st Dist.] 1988, pet. ref'd), as authority for
reversal of his conviction. However, although Reddie and Ballard
are similar to this case factually, a critical difference between
them and the instant case is that there was evidence here that the
car was in "drive." Because there is no statutory definition of
the word "operate," the plain meaning of the word controls its
construction. Reddie, 736 S.W.2d at 926. The plain meaning of
"operate" is "to perform a function, or operation, or produce an
effect," or, in other words, to exert effort--the "doing of
something, by the operator." Id. Even though Hanzlicek was
sleeping at the time McGee found him, he was exerting effort,
whether he realized it or not, by "braking" the vehicle. This
effort, along with the fact that the car's motor was running, its
lights shining, and its transmission in gear, is sufficient to show
that Hanzlicek was operating the car. See, Boyle v. State, 778
S.W.2d 113 (Tex. App.--Houston [14th Dist.] 1989, no pet.).
Â Â Â Â Â Additionally, even if we were to hold that Hanzlicek was not
operating the car at the time McGee found him, the circumstantial
evidence present in this case proves that at some point Hanzlicek
must have driven the car while he was intoxicated. In reviewing a
circumstantial evidence case, the evidence is not sufficient unless
every reasonable hypothesis is excluded except the guilt of the
defendant. Vanderbilt v. State, 629 S.W.2d 709, 716 (Tex. Crim.
App. 1981). Hanzlicek asserts that because there was no evidence
of how long the car had been there, how long he had been
intoxicated, or how long he had been in the car, reasonable
hypotheses are that someone else drove the car to its location, or
he was sober when he drove the car to its location, but
subsequently he drank and became intoxicated. These are not
reasonable hypotheses. There was no one else present at or near
the scene, and even if someone else drove the car to its location,
he most likely would have turned the engine and the lights off, and
at the very least, placed the car in "park" before exiting the car. 
If Hanzlicek had been sober when he stopped the car, he too, almost
certainly would have placed the car in "park" before he imbibed. 
There was no evidence of any alcoholic containers in or around the
car, which points to Hanzlicek's drinking at some other time.
Â Â Â Â Â Therefore, there was sufficient evidence to allow a rational
trier of fact to find Hanzlicek guilty of driving while
intoxicated. The point of error is overruled and the judgment is
affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TERRY R. MEANS
DO NOT PUBLISHJustice
Â 



ng the suit.

Standard of Review

Imposing Rule 13 sanctions is within
the trial courts sound discretion.Â  Monroe v. Grider, 884 S.W.2d
811, 816 (Tex. App.ÂDallas 1994, writ denied).Â  Accordingly, we review a trial
courtÂs order for sanctions under an abuse of discretion standard.Â  Cire
v. Cummings, 134 S.W.3d 835, 838 (Tex. 2004).

The determination of whether a trial court
abused its discretion is a question of law.Â  Jackson v. Van Winkle,
660 S.W.2d 807, 810 (Tex. 1983), overruled in part on other grounds by
Moritz v. Preiss, 121 S.W.3d 715, 721 (Tex. 2003).Â  A trial court abuses its discretion when
it acts arbitrarily and unreasonably, without reference to guiding rules or
principles, or when it misapplies the law to the established facts of the case.
Â Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241 (Tex. 1985).Â  ÂA trial
court has no discretion to determine what the law is or in applying the law to
the facts and, consequently, the trial courtÂs failure to analyze or apply the
law correctly is an abuse of discretion.ÂÂ  In re American Homestar of
Lancaster, Inc., 50 S.W.3d 480, 483 (Tex. 2001). Â Â Â Â Â Â Â Â  A trial court also
abuses its discretion in imposing sanctions if it bases the order on a clearly
erroneous assessment of the evidence.Â  Monroe, 884 S.W.2d at 816.

The Pleadings and Evidence

The BrozynskisÂ original petition
alleged the following facts:

5.Â  Beginning on or about October 1,
2003, Defendants erected a large wooden play set, which site is directly south
of and immediately adjacent to PlaintiffsÂ property.Â  Defendants had not
consulted with Plaintiffs nor had they asked for permission to erect such construction
knowing fully well that the play set had been erected in violation of the
residential deed and to intentionally harass and disrupt PlaintiffsÂ life.Â 
Specifically, in the course of using this equipment extensively, children who
are playing on the play set are constantly screaming and trespassing by looking
into the PlaintiffsÂ entire backyard, and especially the swimming pool area,
resulting in constant disruption of life during afternoon and evening hours
when Plaintiffs return from work, as well as during the weekend.Â  In an effort
to resolve the matter amicably and avoid court proceedings on or about August
17, 2004, Plaintiff, Kathy Brozynski, approached Sheila Kerney and requested
the play set be removed permanently or transferred further away from the
adjacent property line.Â  Defendant Sheila Kerney used obscene and uncensored
language.Â  The particulars of the assault are as follows:Â  Defendant Sheila
Kerney stepped very close to Kathy Brozynski and threatened her in front of
other neighbors by saying ÂNow, IÂll show you where shits like you belong.ÂÂ 
Kathy Brozynski felt such apprehension that she immediately retreated to her
house in fear of imminent harm.Â  Prior to this event, Defendant Jared Kerney
used obscene language towards PlaintiffsÂ minor children, Max and Martina,
causing the children great distress and nervousness.Â  Defendant Sheila Kerney
continues to use obscene language whenever she hears the Brozynski family out
in their backyard.

Â 

6.Â  Furthermore, immediately adjacent
to PlaintiffsÂ property on DefendantsÂ driveway, the Defendants entertain the
entire neighborhood, consuming alcohol, allowing young children to play on the
driveway, using obscene language and partying until late night hours.Â  Needless
to say, this obnoxious and harassing behavior causes disruption in PlaintiffsÂ
life.Â  Furthermore, the lights which light up the DefendantsÂ driveway are
illuminated from early afternoon hours until the next morning and are
intentionally and maliciously focused upon PlaintiffsÂ master bedroom windows
causing constant bright glare and preventing Plaintiff from getting a decent
nightÂs sleep.Â  The viciousness of DefendantsÂ conduct prevents Plaintiffs from
the use and enjoyment of their property.

Â 

The BrozynskisÂ original petition,
which was filed on September 29, 2004, requested a temporary injunction that
the Kerneys be enjoined from engaging in the conduct and activities at issue
and a permanent injunction ordering either the removal of the play set or its
movement to at least fifteen feet from the adjacent property line.

On November 2, 2004, Mr. Walker, the
BrozynskisÂ attorney, wrote the court to cancel the hearing on the BrozynskisÂ
request for a temporary injunction, stating:Â  ÂIt is my understanding that the
Defendants have removed the play set and, therefore, there is no longer any need
for a hearing on the Temporary Injunction since the play set removal issue is
moot.Â

Thereafter, the Kerneys filed a
no-evidence motion for summary judgment (which the trial court never ruled
on).Â  In response to that motion, the Brozynskis filed their own affidavits.Â 
KathyÂs affidavit states in pertinent part:

6.Â  Furthermore, Defendants illuminated
their driveway with very bright light bulbs that were directed at my bedroom
windows.Â  On one occasion, I approached Jared Kerney and asked him to re-direct
the light.Â  Not only was the light not re-directed, but the existing bulbs were
replaced with higher wattage bulbs that shined throughout the night and
sometimes during the day.Â  Prior to their moving, Defendants programmed their
light system in such a way that the lights in the driveway stayed on all day,
every day. . . .

Â 

7.Â  Sometime in 2003, when I came from
work, I noticed a wooden construction about 12 feet high protruding over my
fence.Â  It had been erected immediately adjacent to our property fence,
although Defendants had considerable space to otherwise place this wooden
construction.Â  This was a direct breach of the Declaration of Covenants,
Conditions, and Restriction for Beckley Heights, Phase 3, subdivision.Â 
Defendants never notified me nor asked for permission to assemble the play set
in such close proximity to the fence.

Â 

8.Â  I observed DefendantsÂ children as
well as other children playing on this wooden construction since early October
2003.Â  At times there were 10-15 children playing on this wooden construction,
at least 4 times a week between 7 p.m. and 11 p.m. shouting and hollering at
each other.Â  I observed them playing during the weekend at different hours. . .
.

Â 

9.Â  I observed DefendantsÂ child and
children of their guests throwing trash and rocks and yelling while standing on
the top of the play set.

Â 

10.Â  At all times relevant, I was
working in Dallas, Texas; I would leave early in the morning and return at
about 7 p.m.Â  When I was at home, I was not able to relax or enjoy my home,
inside or out.Â  I was frequently disturbed by yelling, screaming and loud music
played from the Defendants property.Â  I cried frequently and was not able to
sleep. . . .

Â 

11.Â  Our neighborsÂ activities on the
play set escalated to the point that during spring, summer and fall of 2004,
neither myself, my husband, nor my children were able to use our backyard and
swimming pool when Defendants were at home.Â  I was afraid that I would be
observed and my privacy violated.Â  I was depressed and withdrew socially.Â  I
was unable to invite friends over for fear of being embarrassed or very
uncomfortable having to tell them that we are not able to use our backyard and
swimming pool.Â  My children were not able to invite their friends over because
they feared being observed and laughed at by the children on the play set.

Â 

KathyÂs affidavit concludes with a
reiteration of the alleged assault by Sheila Kerney and with a description of
actual damages, including $480 in damage to the BrozynskisÂ fence caused by
hooks of the play set that had been attached to the fence.Â  Krzysztof
BrozynskiÂs affidavit sets out nearly identical facts.

The Brozynskis next filed (on March 3,
2005) an amended petition whose facts remained as set out above.Â  It added a
cause of action for intentional infliction of emotional distress but no longer
sought injunctive relief.Â  At a hearing held on March 14, 2005, the trial court
gave the Brozynskis thirty days to amend their petition to plead viable causes
of action.Â  Instead of repleading, the Brozynskis filed their motion to dismiss
without prejudice on April 11, and two weeks later, the Kerneys filed their
motion for sanctions.

Rule 13 Sanctions

The trial courtÂs judgment expressly
imposed sanctions under Texas Rule of Civil Procedure 13.Â  Appellants first
argue that the trial court abused its discretion by imposing sanctions under
Rule 13 when the KerneysÂ motion for sanctions was broughtÂ  Â under chapters 9
and 10 of the Civil Practice and Remedies Code.Â  See Tex. Civ. Prac. & Rem. Code Ann. Â§Â§
9.011-.014, 10.001-.06 (Vernon 2002). Â We assume without deciding that the
KerneysÂ motion and counterclaim for sanctions is a sufficient basis for the
imposition of Rule 13 sanctions.

Rule 13 authorizes a trial court to
impose sanctions against an attorney, a represented party, or both, who file a
groundless pleading brought in bad faith or brought for the purpose of
harassment.Â  Tex. R. Civ. P.
13.Â  The rule defines ÂgroundlessÂ as having Âno basis in law or fact and
not warranted by good faith argument for the extension, modification, or
reversal of existing law.ÂÂ  Id. Â In determining whether
sanctions are appropriate, the trial court must examine the facts available to
the litigant and the circumstances existing when the litigant filed the
pleading.Â  Alejandro v. Bell, 84 S.W.3d 383, 392 (Tex. App.ÂCorpus
Christi 2002, no pet.).Â  The trial court uses an objective standard to
determine if a pleading was groundless:Â  did the party and counsel make a
reasonable inquiry into the legal and factual basis of the claim?Â  In re
United Servs. Auto AssÂn, 76 S.W.3d 112, 115 (Tex. App.ÂSan Antonio 2002,
orig. proceeding).

Rule 13 also provides:Â  ÂNo sanctions
under this rule may be imposed except for good cause, the particulars of which
must be stated in the sanction order.ÂÂ  Tex.
R. Civ. P. 13.Â  In reviewing an award of sanctions, we ordinarily
look to the particulars of good cause set out in the sanction order.Â  Woodward
v. Jaster, 933 S.W.2d 777, 782 (Tex. App.ÂAustin 1996, no writ).

Â 

Analysis

The trial courtÂs judgment found that
the following three allegations in the BrozynskisÂ original and amended
petitions were Ânot warranted by existing law and not supported by any
reasonable request for the extension, modification, or reversal of existing
lawÂ:Â  (1) the contentionÂallegedly made by the BrozynskisÂthat the Kerneys had
a duty to secure the BrozynskisÂ permission to erect the swing set on the
KerneysÂ property;[1]
(2) the BrozynskisÂ contention that the act of looking at adjacent property
with oneÂs eyes is a physical entry or Âairspace invasionÂ sufficient to
constitute trespass; (3) the BrozynskisÂ contention of an Âairspace invasionÂ
by the use of household lighting is a trespass.Â  

Rule 13 directs a trial court to
presume that a pleading was filed in good faith.Â  Tex. R. Civ. P. 13; GTE Comm. Sys. v. Tanner, 856
S.W.2d 725, 731 (Tex. 1993).Â  ÂThus, the burden is on the party moving for
sanctions to overcome this presumption.ÂÂ  GTE, 856 S.W.2d at 731.Â  A
groundless pleading is not sanctionable unless it also was brought in
bad faith or for the purpose of harassment.Â  Id.Â  The trial court must
hold an evidentiary hearing to make the necessary factual determinations about
the partyÂs or attorneyÂs motives and credibility.Â  Alejandro v. Robstown
ISD, 131 S.W.3d 663, 670 (Tex. App.ÂCorpus Christi 2004, no pet.).Â  Without
such an evidentiary hearing, the trial court has no evidence before it to
determine that a pleading was filed in bad faith or to harass.Â  Id.; accord Karlock v. Schattman, 894 S.W.2d 517, 523 (Tex. App.ÂFort Worth 1994, orig. proceeding) (ÂWithout hearing evidence on the
circumstances surrounding the filing of the pleading signerÂs credibility and
motives, a trial court has no evidence to determine that a pleading was filed
in bad faith or to harass.Â).Â  The party moving for sanctions must prove the
pleading partyÂs subjective state of mind:Â  bad faith
does not exist when a party exercises bad judgment or negligence; under Rule
13, bad faith exists only for the conscious doing of a wrong for dishonest,
discriminatory, or malicious purposes. Â See Mattly v. Spiegel, Inc.,
19 S.W.3d 890, 896 (Tex. App.ÂHouston [14th Dist.] 2002, no
pet.).Â  Improper motive is an essential element of bad
faith for purposes of imposing sanctions for groundless, bad-faith pleadings. Â Wallace
v. Investment Advisors, Inc., 960 S.W.2d 885, 889 (Tex. App.ÂTexarkana
1997, pet. denied).Â  

On the above three allegedly groundless
allegations, the trial court did not make a particular finding of bad faith or
harassment.Â  See McCain v. NME Hosps., Inc., 856 S.W.2d 751, 757
(Tex. App.ÂDallas 1993, no writ) (ÂThe trial court must find that the pleadings
are in fact groundless and were brought in bad faith or to harass.Â).Â  The
trial courtÂs failure to make a particular finding on bad faith or harassment is
an abuse of discretion.Â  ÂTrial courts are not at
liberty to ignore the clear and unambiguous language of
this rule. Â When imposing Rule 13 sanctions, the trial court is required to
make particularized findings of good cause justifying the sanctions. Â Failure
to comply with this clear directive is an abuse of discretion.Â Â Texas-Ohio
Gas, Inc. v. Mecom, 28 S.W.3d 129, 135-36 (Tex. App.ÂTexarkana 2000, no
pet.).

We recognize that Mecom also
holds that failure to object to the form of the sanctions order results in the
forfeiture of an objection to the absence of a bad faith or harassment finding.[2]Â 
See id. at 135.Â  Other courts agree.[3]Â 
We have found no Texas Supreme Court case addressing the issue.

Nevertheless, because Appellants may
have waived that objection to the order, we focus on whether the evidentiary
record supports an implied finding of bad faith or harassment.Â  See id.
at 136; McCain, 856 S.W.2d at 757.Â  No evidence of AppellantsÂ improper
motive was adduced at the hearing.[4]Â 
At the hearing, the KerneysÂ attorney testified on the amount of attorneyÂs
fees incurred in defending the suit.Â  He also offered his opinion that the
BrozysnkisÂ pleadings were Âgroundless, filed in bad faith for the purpose of
harassment,Â but such conclusory opinion testimony is not evidence of WalkerÂs
or Kathy BrozynskiÂs motives or credibility.Â  Walker was not present at the
hearing, and the Kerneys did not call Kathy (who argued the motion for
sanctions for Appellants) as a witness.Â  Evidence must be admitted under the
rules of evidence at the evidentiary hearing for a trial court to consider it
in a Rule 13 context. Â Bell, 84 S.W.3d at 393; see McCain,
856 S.W.2d at 757 (motions and arguments of counsel are not evidence in a Rule
13 context).Â  The pleading alone cannot establish that the represented party or
its attorney brought their case in bad faith or to harass.Â  McCain, 856
S.W.2d at 757.Â  And the BrozynskisÂ filing of a motion to dismiss (a nonsuit)
is not, by itself, evidence of bad faith.Â  See Mattly, 19 S.W.3d at
896-97.

The trial court had no evidence before
it to determine AppellantsÂ motives and credibility. Â Accordingly, we need not
address the groundlessness findings, and we hold that the trial court abused
its discretion in assessing Rule 13 sanctions against Appellants on the above
three allegations in the BrozynskisÂ petitions.Â  See Alejandro, 131
S.W.3d at 670; Bell, 84 S.W.3d at 393; Karlock, 894 S.W.2d
at 523-24; McCain, 856 S.W.2d at 757-58.

The only other pleading that the trial
court cited in the sanctions judgment was the amended petitionÂs allegations of
a continual course of conduct and continuing damages.Â  The trial court faulted
these allegations because the amended petition was filed after the play set had
been removed and after the Kerneys had moved.Â  The trial court found:Â  

4)Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
On November 9,
2004, PlaintiffsÂ attorney/co-counsel Cornel W. Walker in a letter to the Court
cancelling [sic] the hearing on PlaintiffsÂ Request for Temporary Injunction
acknowledged that the Defendants had removed the swing set.

Â 

5)Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
PlaintiffsÂ First
Amended Original Petition seeking continuing damages Âof $500.00 per month from
October 1, 2003 until the activity made the basis of this action ceasesÂ for
Trespass by Âairspace invasionÂ caused by Âchildren who are playing on the play
set . . . (who) are constantly screaming and trespassing by looking into the
PlaintiffsÂ entire back yard and especially the swimming pool area . . .Â was
filed with the Court on March 3, 2005, a date well after the Plaintiffs were
aware that the Defendants had removed the swing set, sold their home and moved
out of state.

Â 

6)Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
PlaintiffsÂ filing
of the First Amended Petition complaining of a continual course of conduct and
seeking continuing damages from their next-door neighbor months after the Kerneys
removed the swing set, sold their home, and moved out of state constitutes a
bad faith, if not outright fraudulent, pleading filed with the Court.

Â 

As we note above, in filing their
amended petition, the Brozynskis removed their claim for injunctive relief but
added a claim for intentional infliction of emotional distress.Â  Again, we find
that the trial court had no evidence before it to determine AppellantsÂ motives
and credibility as to these particular allegations.[5]Â 
Furthermore, AppellantsÂ failure to amend their petition to reflect that the situation
had changed and that they were no longer seeking future damages is only an
inadvertent or negligent oversight in the pleading process.Â  See Mattly, 19 S.W.3d
at 896 (Âbad faith does not exist when
a party exercises bad judgment or negligenceÂ).Â  These particular
pleading errors were borderline trivial mistakes.Â  The trial court abused its
discretion in finding these allegations to have been made in bad faith.

Conclusion

We sustain AppellantsÂ sole issue.Â  We
reverse the trial courtÂs judgment and render judgment that the Kerneys take
nothing on their counterclaim and motion for sanctions.

Â 

BILL VANCE

Justice

Â 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Â Â Â Â Â Â Â Â Â Â Â  (Dissenting
opinion by Chief Justice Gray)

Reversed
and rendered

Opinion
delivered and filed August 2, 2006

[CV06]









Â Â Â  [1]Â Â Â Â Â Â Â Â Â Â  Specifically,
the trial court found that Âthe Brozynskis requested the Court to enter a
Temporary Injunction requiring the removal of a swing set which Defendants erected
on DefendantsÂ property on the grounds that the swing set was erected Âwithout
the consent or permission of Plaintiffs.ÂÂ  The contention that Defendants had a
duty to secure PlaintiffsÂ permission to erect a swing set on DefendantsÂ
property is not warranted by existing law and not supported by any reasonable
request for the extension, modification, or reversal of existing law.ÂÂ  This
part of the trial courtÂs judgment misquotes and mischaracterizes the
BrozynskisÂ allegations in several respects.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  First, nothing in the record refers to the
play set as a mere Âswing set.ÂÂ  The petition refers to it as a Âlarge wooden play set.ÂÂ  KathyÂs
affidavit describes it as a
Âwooden construction about 12 feet high . . . erected immediately adjacent to
our property fence, although Defendants had considerable space to otherwise
place this wooden construction.ÂÂ  Second, the trial courtÂs quotation from the
BrozynskisÂ petition (Âwithout the consent or permission of PlaintiffsÂ) is
inaccurate.Â  The petition alleged:Â  ÂDefendants
had not consulted with Plaintiffs nor had they asked for permission to erect
such construction knowing fully well that the play set had been erected in
violation of the residential deed and to intentionally harass and disrupt
PlaintiffsÂ life.ÂÂ  The Brozyinskis did not allege that the Kerneys had a duty
to secure their permission to erect the play set; they alleged (as explained in
detail in KathyÂs affidavit) that the Kerneys had not received permission to
breach the subdivisionÂs deed restrictions by building such a large wooden
structure.Â  At the hearing, Appellants argued that this allegation was that the
Kerneys were required to obtain the permission of the subdivisionÂs
architectural guidelines committee.Â  Finally, as part of the trespass claim,
the petition alleged that
the play setÂs hooks had been attached to the BrozynskisÂ fence and thus was an
invasion (i.e., without permission) of the BrozynskisÂ property, and
KathyÂs affidavit described that damage that the play setÂs hooks had caused to
the BrozynskisÂ fence.





[2] Â Â Â Â Â Â Â Â Â Â Â Â Â  We note that Rule 13
uses the obligatory term ÂmustÂ for the trial courtÂs duty to state the good
cause particulars in the sanction order. Â See Tex. R. Civ. P. 13.

Â 





[3] Â Â Â Â Â Â Â Â Â Â Â Â Â  Alexander v.
Alexander, 956 S.W.2d 712, 714 (Tex. App.ÂHouston [14th Dist.] 1997, pet.
denied); Land v. AT & S Transp., Inc., 947 S.W.2d 665, 667 (Tex.
App.ÂAustin 1997, no writ); Campos v. Ysleta Gen. Hosp., Inc., 879
S.W.2d 67, 70 (Tex. App.ÂEl Paso 1994, writ denied); McCain v. NME Hosps.,
Inc., 856 S.W.2d 751, 755-56 (Tex. App.ÂDallas 1993, no writ).

Â 





[4] Â Â Â Â Â Â Â Â Â Â Â Â Â  During
the hearing, the trial court appeared to believe that the BrozynskisÂ motive
was not one of bad faith or to harass, stating to Kathy:

I think . . . the
Motion for Sanctions is well-founded in this case.Â  ItÂs well-founded because
the PlaintiffsÂ case has not stated a cause of action under Texas law.Â  ThatÂs
not to say that the problems that you felt you incurred living next door to the
Kerneys, thatÂs not a comment on the merits of how you felt or how you felt
your privacy was invaded or how you felt it was living next to them.





[5] Â Â Â Â Â Â Â Â Â Â Â Â Â  At the March 14 hearing,
Kathy acknowledged to the trial court that the Brozynskis were seeking damages
for only past conduct.