**Ida E. DOWNER, Petitioner,**

v.

**AQUAMARINE OPERATORS,
INC., Respondent.**

No. C–4141.

Supreme Court of Texas.

Dec. 4, 1985.

Rehearing Denied Jan. 15, 1986.

John O'Quinn, Frank M. Staggs, Jr., O'Quinn & Hagans, Houston, for petitioner.

Terry P. Ayre and Thomas A. Brown, Brown, Sims, Wise & White, Houston, for respondent.

WALLACE, Justice.

This is an appeal from a judgment for damages in a suit brought under the Jones Act and under admiralty law. The trial dealt only with damages because the trial court struck the defendant's answer as a discovery abuse sanction and signed an interlocutory default judgment as to liability. The court of appeals reversed the trial court judgment, holding that the action of

that court was an error of law and an abuse of discretion. 689 S.W.2d 472. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

The issues before us are whether TEX.R. CIV.P. 215a(c), as it existed prior to the amendment effective August 1, 1984, authorized the trial court to strike defendant's answer, and, if so, whether the exercise of that authority constituted an abuse of discretion.

Edward P. Downer was a seaman aboard the vessel FOUR POINT IV. He drowned while attempting to free a line that had fouled the vessel's propeller. Ida E. Downer, his widow, brought this action against Aquamarine Operators, Inc., the owner and operator of the vessel. The case was filed in the 151st District Court of Harris County. Both Downer and Aquamarine are residents of Harris County, Texas.

Downer filed Notice of Intent to Take the Depositions of All Members of The Crew on June 1. The notice identified each crew member, including the captain, Chester P. Dalfrey, by name only. Downer also requested depositions of the immediate supervisor of Chester Dalfrey and the custodian of Edward Downer's personnel file. On June 1, Aquamarine notified Downer that the crew was at sea and would not appear. Aquamarine at that time agreed to produce the requested persons on June 22. On June 21, Aquamarine again notified Downer that the crew was at sea and would not appear. It agreed to produce them on July 5.

Downer filed written Notice of Intent to Take Depositions of the same individuals for July 5. On that date, the requested deponents did not appear, whereupon Downer filed a Motion for Sanctions. A hearing on the Motion for Sanctions was set for August 22. Aquamarine made no appearance at the hearing; the trial court granted the Motion for Sanctions and signed an Order Striking Aquamarine's Answer.

Downer filed a Motion for Interlocutory Default Judgment to which Aquamarine responded. The response contained Aquamarine's reasons for not producing the requested individuals for depositions and its failure to appear at the sanctions hearing.

The reason offered for the first two occasions was that work for the FOUR POINT IV was scarce and, when work was available, it was necessary to send the vessel and crew to sea rather than produce them for depositions. On the third occasion, the vessel was in port at New Iberia, Louisiana, but Coast Guard regulations required a skeleton crew to be kept aboard at all times. Aquamarine's attorney stated that he notified Downer's attorney on July 1 of the necessity to take the depositions in New Iberia. Downer's attorney stated that he first learned that the individuals would not appear as noticed when Aquamarine's attorney called him an hour after the depositions were scheduled to commence. Both agreed that Aquamarine requested that the depositions be taken in New Iberia on July 6. However, Downer's attorney stated that he could not do so because he was preferentially set for trial in Houston starting at 9:00 a.m. on July 6.

The reason given by Aquamarine for not appearing at the sanctions hearing was that Hurricane Alicia had struck La Porte, the residence of Mr. Ayres, Aquamarine's lead counsel, four days previously. Mr. Ayres was involved in cleaning up after the hurricane and mitigating the damages to his home. Also, he had a hearing set in federal court in Beaumont on the following day and was directing all of his available attention to that matter.

To his Motion to Reconsider the Sanctions, Mr. Ayres attached an affidavit from his secretary, which stated that she had called the clerk of the court on July 7, and had advised her that Mr. Ayres had to make a docket call in Angleton on August 22. She understood the clerk to say that the sanctions hearing would be reset for September 6. In response to this motion, Downer's attorney advised the court by letter of his version of the circumstances leading up to the non-appearance on July 5, and the time when he was first advised

that the named individuals would not appear. Attached to this letter to the court was a copy of a letter dated July 28, written by Mr. Bales, an associate of Mr. Ayres, which confirmed that the sanctions hearing was set for August 22.

With the above information before it, the trial court overruled Aquamarine's Motion to Reconsider the Sanctions and to reinstate its answer. The court signed an order granting an interlocutory default judgment as to liability. Aquamarine filed a Motion to Set Aside the Default Judgment. The motion contained practically the same information as the Motion to Reconsider Sanctions set out above. The trial court considered this motion and overruled it. On April 16, 1984, the case was preferentially set for trial for June 4, and the trial court refused to consider Aquamarine's Second Motion to Set Aside the Interlocutory Default Judgment and Reinstate Defendant's Pleadings.

A jury trial was had in a different court, the 334th District, on the issue of damages. At the trial, Chester Dalfrey testified that he was captain of the FOUR POINT IV and as such he was in complete charge of the vessel with authority over all of its operations. Mr. Clark Ivans testified that he was president of Aquamarine at all times pertinent to this case, and that as such, he was the immediate supervisor of Chester Dalfrey.

■ We now address the issue of whether the trial court had authority under Rule 215a(c) to strike Aquamarine's answer. That rule stated in pertinent part:

> If a party or an officer or managing agent of a party, except for good cause shown, fails to appear before the officer who is to take his oral deposition ... the court in which the action is pending on motion and notice may strike out all or any part of the pleading of that party or dismiss the action or proceeding or any part thereof....

As noted above, Ivans testified that as president of Aquamarine he was in complete charge of all operations of the company. Thus he was a party as contemplated by Rule 215a(c).

■ The next question is whether the trial court, in refusing to grant a new trial and reinstate Aquamarine's answer, could consider the evidence introduced subsequent to the original sanctions hearing. Aquamarine contends that the trial court, in imposing sanctions, could consider only the evidence before it at the time of the sanctions hearing, and not any evidence subsequently produced. A trial court's plenary jurisdiction gives it not only the authority but the responsibility to review any pre-trial order upon proper motion. In doing so, it is presumed that the court is familiar with the entire record of the case up to and including the motion to be considered. The plenary jurisdiction of the trial court in this case continued through the final judgment and overruling of Aquamarine's motion for new trial. When considering the motion for new trial, the court had before it the reasons advanced by Aquamarine for not appearing for depositions or the sanctions hearing; Downer's response to Aquamarine's motions; and the evidence produced at the trial on damages. Thus, the court of appeals erred in holding that the trial court did not have authority under Rule 215a(c) to strike Aquamarine's answer.

We now turn to the court of appeals holding that the trial court abused its discretion in striking Aquamarine's answer. The court of appeals concluded its review of the abuse of discretion issue by stating: "The facts of the case simply do not, in our opinion, show this to be an appropriate case to impose the ultimate sanctions of striking the pleadings and entering default judgment." We interpret that statement to mean that the court of appeals disagreed with the decision of the two trial judges who reviewed the matter.

■ The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and

principles. *Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Comm.App.—1939, opinion adopted). Another way of stating the test is whether the act was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1982); *Landry v. Travelers Insurance Co.,* 458 S.W.2d 649, 651 (Tex.1970). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Telephone Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965); *Jones v. Strayhorn,* 321 S.W.2d 290, 295 (Tex.1959).

To determine the trial judge's guiding rules and principles in imposing sanctions for discovery abuse, we must look to the Texas Rules of Civil Procedure as promulgated and amended by this court as well as the decisions of appellate courts of this State and of the United States. The Texas Rules of Civil Procedure pertaining to discovery and sanctions for noncompliance have been amended several times, culminating in Rule 215a as it existed at the time of this case, and now embodied in Rule 215. The use of sanctions by trial courts to prevent discovery abuse has developed steadily over the past several years. These changes reflect the continuing pattern both to broaden the discovery process and to encourage sanctions for failure to comply.

The United States Supreme Court in *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) approved the use of sanctions not only to assure compliance with the discovery process but also to deter those who might be tempted to abuse discovery in the absence of a deterrent.

This court and various courts of appeals have also followed this progression. *See, e.g., Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex.1985) (Kilgarlin, J., concurring) (unnamed witness not permitted to testify); *Jarrett v. Warhola,* 695 S.W.2d 8 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd) (plaintiff's cause of action dis-

missed); *City of Houston v. Arney,* 680 S.W.2d 867 (Tex.App.—Houston [1st Dist.] 1984, no writ) (defendant's answer struck for failure to answer interrogatories); *Southern Pacific Transportation v. Evans,* 590 S.W.2d 515 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (defendant's answer struck and interlocutory default judgment rendered as to liability), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980).

In various speeches and law review articles, different members of this court have encouraged trial judges to use sanctions to the degree necessary to assure compliance with discovery procedures and deter abuse of the process. Barrow and Henderson, *1984 Amendments to the Texas Rules of Civil Procedure Affecting Discovery,* 15 ST. MARY'S L.J. 713 (1984) (presented to the Texas College of the Judiciary Nov. 29, 1984); Kilgarlin and Jackson, *Sanctions for Discovery Abuse Under New Rule 215,* 15 ST. MARY'S L.J. 767 (1984); Pope and McConnico, *Practicing Law With the 1981 Texas Rules,* 32 BAYLOR L.REV. 457 (1981); Spears, *The Rules of Civil Procedure: 1981 Changes In Pretrial Discovery,* 12 ST. MARY'S L.J. 633 (1981).

The trial court in this case was free to examine the factors before it to determine whether to levy sanctions. Among these were the following: (1) whether voluntarily sending the crew to sea rather than producing them for depositions as agreed on two occasions was in conscious disregard of this court's rules; (2) whether the contradictory statements of both attorneys indicated that Aquamarine's attorney did in fact wait until one hour past the scheduled time for depositions on July 5, to advise Downer's attorney that he would have to fly to New Iberia and take depositions on the following day; (3) whether Aquamarine's attorney consciously disregarded the sanctions hearing in preference to his personal needs and the federal court case set the following day; (4) whether the information contained in the secretary's affidavit as to the date of the sanctions hearing conflicted with the letter from an attorney

in that law firm confirming that the hearing was set on August 22; and (5) the unexplained failure of Aquamarine to produce for depositions on any of the occasions in question Clark Ivans, the immediate supervisor of Chester Dalfrey and the president of Aquamarine.

 The record contains no indication that the trial court was capricious, arbitrary, or unreasonable. Thus, the court of appeals erred in holding that the trial court abused its discretion.

In determining whether to reverse and render this cause or to remand it to the court of appeals, we must look to the four points of error raised by Aquamarine before the court of appeals but not addressed by that court. If those points raise questions of law, as opposed to questions of fact, they can be addressed by this court.

The first point was that Downer's First Amended Original Petition was insufficient to support the judgment. The contention is that the facts supporting the cause of action were not pleaded. TEX.R.CIV.P. 47 requires that a petition contain a short statement of the cause of action sufficient to give fair notice of the claim involved. Our rules do not require pleadings to contain evidence or factual detail. That point is overruled.

The second point was that the trial court improperly refused to strike a juror for cause. After the court had ruled on challenges for cause, there were 26 names left on the jury list. Each party was given six jury strikes, so, after making those strikes, 14 names remained on the list. The challenged juror was Number 14 and was thus a spare. There was no harm in refusing to dismiss him for cause.

The third point was that the trial court improperly refused to admit evidence of Downer's contributory negligence. Contributory negligence is an affirmative defense which must be pleaded. Aquamarine's answer had been struck and default judgment rendered as to liability. Thus, defendant had no pleading to support contributory negligence, so the court did not err in refusing to admit the requested evidence.

Aquamarine's remaining point before the court of appeals was that the trial court erred in awarding prejudgment interest in a Jones Act case tried to a jury. This point was not presented to the trial court and was thus waived.

Aquamarine's points of error presented to the court of appeals but not considered by that court concerned questions of law over which we have jurisdiction. There is no merit to these points so it is not necessary for this cause to be remanded to the court of appeals.

The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.