Larry **GENTRY**, Appellant,

v.

**WEAVER DEVELOPMENT COMPANY**
**and Huel H. Weaver, Jr., Appellees.**

No. 2–94–220–CV.

Court of Appeals of Texas,
Fort Worth.

Oct. 26, 1995.

David Hardaway, Fort Worth, for appellant.

Dan S. Boyd, Cecila A. Martin, Dallas, for appellees.

Before LIVINGSTON, DAUPHINOT and BRIGHAM, JJ.

## OPINION

LIVINGSTON, Justice.

In this appeal we must decide if the trial court abused its discretion by entering "death penalty" sanctions against appellant Larry Gentry for discovery abuse. Because the trial court did not abuse its discretion, we overrule appellant's two points of error and affirm the trial court's judgment.

### THE UNDERLYING SUIT

Appellees Weaver Development Company and Huel H. Weaver, Jr. brought this suit against Gentry to quiet title and to remove clouds to the titles to two properties owned by appellees. Appellees also sued Gentry for breach of fiduciary duty, conversion, slander of title, extortion, defamation, breach of contract, and interference with contractual relations, seeking actual and punitive damages, injunctive and declaratory relief, and attorney's fees.

After striking Gentry's counterclaims and defenses and prohibiting him from testifying at trial as sanctions for Gentry's discovery abuse, the trial court held a trial on the merits. The trial court entered a final judgment for appellees that quieted the titles to the two properties, enjoined Gentry from slandering or clouding the titles to those properties, required Gentry to remove the clouds on the titles to those properties, and removed Gentry as manager of those properties. In the judgment the trial court also found that Gentry converted money belonging to appellees, breached his agreements with and his fiduciary duty to appellees, and tortiously interfered with appellees' business relations. The trial court awarded appellees actual damages of $124,100, punitive damages of $10,000, and attorney's fees.

Gentry's appeal does not concern the merits; it only addresses the discovery sanctions.

### PROCEDURAL HISTORY

Appellees filed their Original Petition and Application for Injunctive Relief on March 11, 1993. Appellees were unable to serve Gentry by usual means and were forced to serve him by substituted service. The trial court then set a hearing on appellees' request for a temporary injunction for June 18, 1993. In preparation for that hearing, the parties conducted initial discovery in the case, including preliminary depositions of Gentry and appellee Weaver. The parties agreed on the record at those depositions to continue the depositions at a later date. The trial court entered a temporary injunction on June 21, 1993 and amended it on July 12, 1993. The injunction ordered Gentry to remove certain clouds that he had filed on the titles to the two properties.

On July 2, 1993, appellees filed a motion to compel the production of certain documents that they were seeking in discovery. The motion sought various documents that would reflect Gentry's net profits and income from the two properties, as well as Gentry's personal calendar for the relevant years. Appellees needed the documents to properly respond to the various issues raised by their pleadings and by Gentry's counterclaims and defenses. The trial court held a hearing on appellees' motion to compel and granted the motion on August 24, 1993. That order was amended on September 27, 1993. The order expressed in clear detail the precise manner of document production required by Gentry.

By September 7, 1993, Gentry had not complied with the trial court's July 12th temporary injunction. Therefore, appellees filed a motion for contempt. On September 30, 1993, another attorney substituted in as counsel for Gentry.

The trial court held a hearing on appellees' motion for contempt, and on October 13, 1993, it granted the motion and held Gentry in contempt of court. The trial court fined Gentry $500 for failing to comply with the temporary injunction and sentenced Gentry to thirty days in jail if he did not comply with the injunction by the following day. Gentry never paid the fine.

Appellees then attempted to resume Gentry's deposition. Appellees filed their notice to resume the deposition on August 24, 1993. Appellees then amended the notice to accommodate Gentry's schedule and filed an amended notice on September 8, 1993. Again, in an effort to accommodate Gentry's schedule, appellees filed a second amended

notice on September 22, 1993. The deposition was noticed for October 6, 1993. Gentry and his counsel did not appear for his deposition on that day and did not give any reason for their failure to appear. Appellees filed an affidavit of nonappearance to reflect Gentry's failure to appear.

Gentry and his counsel continued to disregard the trial court's orders, refusing to produce the documents described in the order granting appellees' motion to compel. On October 4, 1993, appellees filed a supplemental motion for contempt, this time requesting that the trial court hold Gentry in contempt for violating that order. Gentry's counsel had agreed to produce the documents at his offices on September 29, 1993. Counsel for appellees traveled from Dallas to Fort Worth for the document production and waited for fifty minutes. Gentry's counsel was not at his office, and no one there knew anything about the scheduled document production. At the hearing on appellees' supplemental motion for contempt, the trial court again ordered Gentry and his counsel to produce all documents reflected in the prior order granting appellees' motion to compel by the following Tuesday. The trial court also admonished Gentry's counsel and warned him that further discovery abuse would not be tolerated.

On the following Tuesday, counsel for appellees appeared at Gentry's counsel's office for the court-ordered document production. Despite the express representation by Gentry's counsel at the hearing—that Gentry had given him all of the documents the trial court had ordered Gentry to produce and that those documents were in his office waiting to be produced—only a few documents were available to appellees.

On December 8, 1993, appellees again filed a notice to resume Gentry's deposition because the trial court had set the trial for January 10, 1994. Appellees' counsel were unable to confer on the date for the deposition because Gentry's counsel would not return their phone calls. At the request of Gentry's counsel, the deposition was rescheduled to a mutually agreeable date. Appellees then sent an amended deposition notice on December 29, 1993, reflecting the agreement reached between the parties.

Gentry again failed to appear at the noticed deposition, despite his counsel's agreement to the date. Appellees again filed an affidavit of nonappearance. And, again, neither Gentry nor his counsel offered an explanation for their nonappearance, gave no prior warning of their intention not to appear, and never attempted to show good cause why they were not present.

Appellees then filed a motion for sanctions and later a supplement to that motion. These motions set forth the basis for imposing sanctions on Gentry, including his failure to appear at his deposition and his failure to produce documents as required in the trial court's orders compelling their production. Despite Gentry's representations to the contrary, the record reflects that appellees did request that the trial court impose death penalty sanctions on Gentry.

The trial court granted appellees' motion for sanctions. In its January 6, 1994 order, the trial court struck Gentry's counterclaims and all of his defenses to appellees' causes of action, closed discovery as of the date of the order, denied Gentry recovery of any attorney's fees, and ordered that Gentry could not testify at trial.

In two points of error, Gentry alleges that the trial court abused its discretion by entering death penalty sanctions and because Gentry's conduct did not justify the presumption that his claims or defenses lacked merit.

### STANDARD OF REVIEW FOR DISCOVERY SANCTIONS

The standard of review of a trial court's discovery sanctions is abuse of discretion. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In other words, the reviewing court must determine whether the trial court's action was arbitrary or unreasonable. *See id.* at 242. The scope of

review in determining whether the trial court abused its discretion is assayed in light of all the circumstances of the case. *See Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984).

■■■ The trial court is given the broadest discretion in imposing discovery sanctions and in choosing the appropriate sanctions. *See Downer,* 701 S.W.2d at 241; *Carr v. Harris County,* 745 S.W.2d 531, 532 (Tex. App.—Houston [1st Dist.] 1988, no writ). In determining whether to impose discovery sanctions, the trial court is not limited to considering only the specific violation that sanctions are finally imposed for; it may consider everything that has occurred during the litigation. *White v. Bath,* 825 S.W.2d 227, 230 (Tex.App.—Houston [14th Dist.] 1992, writ denied), *cert. denied,* —— U.S. ——, 113 S.Ct. 1868, 123 L.Ed.2d 488 (1993). Discovery sanctions imposed by a trial court will be set aside on appeal only if the trial court abused its discretion. *Bodnow Corp.,* 721 S.W.2d at 840. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 242.

To determine the trial judge's guiding rules and principles in imposing sanctions for discovery abuse, we look to the Texas Rules of Civil Procedure as well as to case law. *See Downer,* 701 S.W.2d at 242. In this case, the sanctions imposed by the trial court are among those authorized for discovery abuse under rule 215 of the Texas Rules of Civil Procedure. Because the trial court did not specify the provisions of rule 215 that it relied on, we will review the portions of rule 215 applicable to the circumstances. *See TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 916 (Tex.1991).

Rule 215(1) allows a party to "apply for sanctions or an order compelling discovery . . ."

(2) if a party . . . fails:

(a) to appear before the officer who is to take his deposition, after being served with a proper notice; or

. . . .

(d) to respond that discovery will be permitted as requested or fails to permit discovery as requested in response to a request for inspection submitted under Rule 167;

the discovering party may move for an order compelling . . . an appearance, . . . or inspection or production in accordance with the request, or apply to the court . . . for the imposition of any sanction authorized by paragraph 2b herein without the necessity of first having obtained a court order compelling such discovery.

Tex.R.Civ.P. 215(1).

Rule 215(2)(b) applies to the circumstances of this case. It provides in pertinent part:

If a party . . . fails to comply with proper discovery requests or to obey an order to provide or permit discovery . . . the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:

(1) An order disallowing any further discovery of any kind or of a particular kind by the disobedient party;

. . . .

(4) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(5) An order striking out pleadings or parts thereof. . . .

Tex.R.Civ.P. 215(2)(b). Paragraph 3 of Rule 215 states in part:

If the court finds a party is abusing the discovery process in seeking, making or resisting discovery . . . then the court in which the action is pending may, after notice and hearing, impose any appropriate sanction authorized by paragraphs (1), (2), (3), (4), (5) and (8) of paragraph 2b of this rule.

Tex.R.Civ.P. 215(3).

■■■ Rule 215(5) mandates that a party who fails to respond to a request for discovery shall not be entitled to present evidence that the party was under a duty to provide in

response to such request, unless the trial court finds good and sufficient cause shown in the record for such failure. TEX.R.CIV.P. 215(5). In *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex.1992), the Texas Supreme Court confirmed that the provision in TEX.R.CIV.P. 215(5) for failure to respond to a request is a mandatory rule, and its sole sanction is the exclusion of the evidence withheld. The exclusion is automatic, unless there is good cause to excuse its imposition. *Id.* Although a trial court has discretion to determine whether the offending party has met his burden to show good cause, the trial court has no discretion to admit the testimony excluded by the rule without such a showing. *Id.*

■ The legitimate purposes of discovery sanctions are threefold: (1) to secure compliance with the discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992). But discovery sanctions must also be "just." *Id.* (citing TEX.R.CIV.P. 215(2)(b) and *Trans-American*, 811 S.W.2d at 917). In determining whether sanctions are just, the supreme court in *TransAmerican* set forth the following two standards:

> First, a direct relationship must exist between the offensive conduct and the sanction imposed. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. It also means that the sanction should be visited upon the offender. The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both.
>
> . . . .
>
> Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.

*TransAmerican*, 811 S.W.2d at 917.

■ Case-determinative, or death penalty, sanctions may be imposed in the first instance only when they are clearly justified and it is fully apparent that no lesser sanction would promote compliance with the rules. *GTE Communications v. Tanner*, 856 S.W.2d 725, 729 (Tex.1993). Death penalty sanctions may be justified if the discovery abuse has persisted over a long period of time and numerous efforts have been made to obtain compliance. *Carr*, 745 S.W.2d at 532–33.

■ The trial court and this court may consider the entire record of the case in assessing sanctions. *Schmitt v. Bordelon*, 844 S.W.2d 273, 278 (Tex.App.—Fort Worth 1992, writ denied). Thus, courts are not limited to considering only the specific violations committed, but are entitled to consider other matters that have occurred during the litigation. *Id.* Factors helpful in this review are: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the discovery abuse; (3) any history of delay; (4) whether the offending conduct was done in bad faith or with callous disregard for responsibilities under the discovery rules; (5) the effectiveness of alternate sanctions; and (6) the merit of the claim. *Stum v. Stum*, 845 S.W.2d 407, 417 (Tex.App.—Fort Worth 1992, no writ). The trial court's own explanation in the record of why it believes death penalty sanctions are justified also assists our appellate review. *See Chrysler Corp.*, 841 S.W.2d at 852 (comparing explanation in record to written findings of fact).

In his first point of error, Gentry claims that the sanctions are not just and are too severe, that they bear no relationship to the conduct involved, and that the trial court did not consider or impose lesser sanctions.

### JUSTNESS AND SEVERITY

■ Gentry never alleged that the documents were not produced or that he did not appear at his noticed deposition because of mistake, lack of information, lack of notice, or even neglect. *See Southern Pac. Transp. Co. v. Evans*, 590 S.W.2d 515, 517 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), *cert. denied*, 449 U.S. 994, 101 S.Ct.

531, 66 L.Ed.2d 291 (1980). The discovery abuse in this case is Gentry's refusal to appear at his deposition and to produce documents as ordered by the trial court. The only inference that can be drawn is that Gentry's discovery abuse was willful. *See id.* The trial court even noted in the record Gentry's bad faith at the trial on the merits:

> In my history on the court, I have never entered an order quite as strong except on one other occasion as the one I entered in this case, because I am thoroughly convinced that there has been an extreme abuse of the discovery process in this case. I want the record to reflect that, my order reflected it. . . .

In its sanctions order, the trial court stated that "Larry Gentry, has done everything possible to obstruct discovery and to obstruct orderly disposition of this case."

Gentry refused to produce documents that were subject to a written court order and an oral court order compelling their production. Those documents dealt in large part with the allegations in Gentry's counterclaims about his and appellees' treatment of the income derived from the properties in question and with any claims that he may have had to ownership of those properties. The documents also contained information relating to appellees' treatment of Gentry in their business dealings. These matters all related to Gentry's counterclaims for breach of fiduciary duty, breach of contract, and fraud, and to his other defenses to appellees' claims. Because Gentry refused to produce them in violation of the court's orders, the trial court did not abuse its discretion by striking Gentry's counterclaims and defenses. Additionally, Gentry's testimony was essential in establishing his counterclaims and defenses. The documents and testimony that Gentry withheld prejudiced appellees' ability to defend against Gentry's counterclaims and defenses and to prepare their own case for trial. They were the only means of obtaining the information to support or challenge Gentry's counterclaims and defenses. The documents and testimony were necessary for appellees to respond to those claims.

Moreover, Gentry does not argue that he established good cause, as required under rule 215(5), for his failure to appear at his deposition on two separate occasions. Rather, he argues that the trial court's exclusion of his testimony is a clear abuse of discretion under the standards set forth in *TransAmerican.* But, as stated in *Alvarado* and *In re A.V.,* 849 S.W.2d 393, 404 (Tex.App.—Fort Worth 1993, no writ), the trial court *must* follow the plain language of the rule and exclude the testimony. *Alvarado,* 830 S.W.2d at 914. The trial court did not abuse its discretion in prohibiting Gentry from testifying at the trial, under either rule 215(2)(b)(4) or rule 215(5).

The sanctions were just, were not excessive, and were directly related to Gentry's failure to produce records and attend his deposition. "The punishment . . . fit the crime." *TransAmerican,* 811 S.W.2d at 917.

### IMPOSITION OF LESSER SANCTIONS

■ Gentry contends that the trial court did not consider lesser sanctions. We look to the record before us to determine if the court considered the imposition of lesser sanctions and whether such sanctions would have been effective. *TransAmerican,* 811 S.W.2d at 918.

■ *TransAmerican* controls this issue. The *TransAmerican* court discussed the need for a correlation between sanctions as a punishment and the purposes sanctions are meant to satisfy. *Id.* at 917–18. To meet this end, the supreme court set forth the requirement that "courts must *consider* the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Id.* at 917 (emphasis added). This same requirement has been reiterated in subsequent supreme court cases. *See GTE Communications,* 856 S.W.2d at 729 (stating "courts must *consider* the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance") (emphasis added); *Otis Elevator Co. v. Parmelee,* 850 S.W.2d 179, 181 (Tex.1993) (noting that "[t]he record does not reflect that the trial court *considered* the availability of lesser sanctions to curb any abuse it found") (emphasis added). This court recently held that rule 215 does

not require that a trial court first impose lesser sanctions before imposing death penalty sanctions. *See Hamill v. Level,* 900 S.W.2d 457, 461 (Tex.App.—Fort Worth 1995, writ requested).

■ In any event, the trial court did impose lesser sanctions before its death penalty sanctions ruling. The trial court held separate hearings on appellees' motion to compel production, motion for contempt (for violation of the injunction), supplemental motion for contempt (for failure to produce documents), and motion and supplemental motion for sanctions. At each hearing, the court imposed a "lesser" sanction in an effort to get Gentry to comply with the rules of procedure and the court's instructions.

At the hearing on appellees' application for temporary injunction, the trial court informed Gentry and his counsel that if the court enjoined Gentry, he would be required to remove all clouds on the title to appellees' property, including the *lis pendens* filed by his counsel. The court issued such an order, and Gentry refused to comply with it. At the hearing on appellees' motion for contempt, Gentry's counsel did not put on any evidence demonstrating why he did not comply fully with the temporary injunction, and the court held Gentry in contempt for that violation. Holding a party in contempt of court is a lesser sanction. *See GTE Communications,* 856 S.W.2d at 730; *Stum,* 845 S.W.2d at 418.

Gentry further showed disrespect for the trial court by not attending the contempt hearing. Because Gentry was not present, the trial court noted that Gentry could not show any mitigating circumstances for his failure to follow the order. The trial court fined him $500 and sentenced him to thirty days in jail if he did not comply with the order within twenty-four hours. Despite the trial court's injunction and the order holding Gentry in contempt, Gentry never fully complied by removing the clouds to the title to the property. He also never paid the fine.

At the hearing on appellees' supplemental motion for contempt, appellees sought production of the documents described in the court's August 24th and September 27th orders compelling production. Gentry's counsel attempted to argue that the court's order was unclear as written and therefore he did not produce the documents as required.

The trial court did not accept Gentry's counsel's excuse and asked if he had the documents in his office ready for production. Gentry's counsel stated affirmatively that he had all of the documents, except Gentry's tax returns for 1992, and that his client had complied with the court's order. Gentry's counsel further stated that he was prepared to turn over Gentry's entire calendar for the relevant years to the court for an in camera inspection as called for in the court's order. That production never occurred. Gentry's counsel represented that Gentry had produced the documents to him but was relying on his attorneys' advice not to produce them to appellees. The trial court then recognized counsel's inappropriate behavior, stating, "I guess it's the attorneys then I need to put in jail. Is that what you're saying . . . ?" After further consideration of the matter, and based on the representation that Gentry had complied with the order by delivering the documents to his attorney, the trial court ordered Gentry's counsel to produce the documents on the following Tuesday. The trial court then clearly warned Gentry's counsel that "[i]f there develops a pattern of avoidance where you don't return your telephone calls, respond to requests for information that are given in accordance with the rules, respond to correspondence requesting dates for depositions and that sort of thing. . . . I'm going to enter a pretrial order and there will be no wiggle room. Everybody will have to do things according to a court order, and a violation of that court order will result in very drastic sanctions for lawyers, as well as parties." The trial court warned that he did not like playing fast and loose with discovery rules and would not tolerate it further. *Id.* Again, the trial court's oral mandate and warnings were additional efforts at imposing lesser sanctions and warnings on Gentry and his counsel. *See National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 640–43, 96 S.Ct. 2778, 2779–81, 49 L.Ed.2d 747, 749–51 (1976); *Braden v. South Main Bank,* 837 S.W.2d 733, 735 (Tex.App.—Houston [14th Dist.] 1992, writ denied), *cert. de-*

*nied,* —— U.S. ——, 113 S.Ct. 2337, 124 L.Ed.2d 248 (1993).

Despite the representations made by Gentry's counsel in open court that he had all the documents called for in the court's order compelling production of documents, that was not the case. On the following Tuesday, appellees' counsel attended the document production only to find that Gentry again failed to produce the documents that the court ordered. Gentry's attorney did produce a very small sample of the documents compelled, but the majority of the documents were never produced. The omitted documents were described in appellees' motion for sanctions. Gentry's counsel also told appellees' counsel that he did not even have the missing documents, despite his representation to the contrary to the trial court just four. days earlier.

The above conduct reflects the trial court's efforts at imposing lesser sanctions on Gentry and Gentry's continued discovery abuse. The trial court had before it each of these instances reflecting Gentry and his counsel's disregard for court orders. The trial court was aware of Gentry's history of delay and of his personal responsibility for the offensive conduct. It was also aware that no lesser or alternative sanctions were available to it to secure compliance with the rules, deter the continued misconduct, or to punish the violator. *See Chrysler,* 841 S.W.2d at 849; *Stum,* 845 S.W.2d at 418. The trial court did not abuse its discretion. Appellant's first point of error is overruled.

In his second point of error, Gentry complains that the trial court erred in striking Gentry's counterclaims and defenses because the trial court made no determination that Gentry's discovery abuse justified a presumption that his claims or defenses lacked merit.

### PRESUMPTION THAT CLAIMS OR DEFENSES LACK MERIT

■■■ Severe sanctions are sometimes necessary to prevent an abusive party from thwarting the administration of justice by concealing the merits of a case. *Braden v. Downey,* 811 S.W.2d 922, 929 (Tex.1991). In the presence of a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules, sanctions that are so severe to preclude presentation of the merits of the case may be assessed. *See TransAmerican,* 811 S.W.2d at 918. Before a trial court may deprive a party of its right to present the merits of its case because of discovery abuse, it must determine that "a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *GTE Communications,* 856 S.W.2d at 730 (citing *TransAmerican,* 811 S.W.2d at 918). The refusal to produce any material evidence, despite the imposition of lesser sanctions, creates a presumption of fact on the bad faith and untruth of a party's trial pleading. *TransAmerican,* 811 S.W.2d at 918.

■■■ If true prejudice has resulted to a party by another party's failure to cooperate during discovery, that factor should be given substantial weight in evaluation of ultimate discovery sanctions. *Pelt v. Johnson,* 818 S.W.2d 212, 217 (Tex.App.—Waco 1991, orig. proceeding); *see Hanley v. Hanley,* 813 S.W.2d 511, 519 (Tex.App.—Dallas 1991, no writ). A party's prejudice can result from such conditions as the destruction of evidence, irretrievable loss of evidence, the inevitable dimming of witnesses' memories, incurring excessive burdens and costs, and other situations in which the party cannot be restored to the same status by an appropriate sanction. *See Pelt,* 818 S.W.2d at 217; *City of Dallas v. Cox,* 793 S.W.2d 701, 724–25 (Tex.App.—Dallas 1990, no writ).

■■■ Gentry's lack of respect for the trial court's orders, his blatant disregard of the requirement to produce documents, and his persistent hindrance of the discovery process all justify the presumption that his claims and defenses lacked merit. In this respect, we also note that the trial court had granted partial summary judgment declaring that appellees were the owners of the properties, that Gentry had no interest in the properties, and that Gentry was no longer manager of the properties. The partial summary judgment effectively mooted Gentry's counterclaims on the merits.

As demonstrated above, there is ample evidence in the record showing Gentry and his counsel's flagrant, bad faith, and callous disregard for the obligations of discovery. *See Revco, D.S., Inc. v. Cooper,* 873 S.W.2d 391, 397 (Tex.App.—El Paso 1994, no writ). Gentry's repeated failure to appear for his deposition, his failure to produce documents despite court orders and oral mandates, his counsel's misrepresentations to the trial court, and his failure to comply with the temporary injunction all warranted the trial court's imposition of severe sanctions. Additionally, Gentry did not even attend the contempt hearings or much of the trial on the merits.

Finally, Gentry never made an attempt to show good cause for his failure to comply with the trial court's orders. Gentry did not even file a response to appellees' motions for sanctions, and the record is devoid of any explanation by Gentry or his counsel for their conduct. Likewise, in his appellate brief, Gentry offers no explanation for his failure to comply with the trial court's orders. All of these facts indicate that Gentry's conduct was willful and in bad faith. *See Stum,* 845 S.W.2d at 418. The trial court did not abuse its discretion in striking Gentry's pleadings. We overrule Gentry's second point of error.

### CONCLUSION

The trial court did not abuse its discretion by imposing death penalty sanctions against Gentry. We overrule Gentry's two points of error and affirm the judgment of the trial court.