**ARIT INTERNATIONAL CORPORATION d/b/a Arit Air Academy and Ibbi S. Ndatah, Appellants,**

v.

**Martin ALLEN, Mark Kafantaris, Harish Pasram, Filomeno Cardoso and Lorenzo Bottegoni, Appellees.**

2–94–177–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 2, 1995.

Thomas P. Finley, Jr., Dallas, for Appellants.

Frank M. Newman, Jr., Fort Worth, for Appellees.

Before RICHARDS and MILLER, JJ., and DRAUGHN, J. (Sitting by Assignment).

## OPINION

RICHARDS, Justice.

In five points of error, appellants complain the trial court abused its discretion in granting a motion for sanctions, which struck the appellants' pleadings and denied them leave to file any additional pleadings. The court then entered judgment against the appellants and conducted a hearing on the unliquidated damages. We conclude the trial court did not abuse its discretion by imposing death penalty sanctions, nor did the trial court abuse its discretion by denying appellants' motion for new trial. We affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a suit for fraud and conversion against appellants, who run a business that provides flight training to prospective pilots. The appellees enrolled as students to begin pilot training. Dissatisfied with the services, the appellees filed suit in this case on October 5, 1993. The appellees sought refunds of the remainder of sums deposited for which they received no training, and they also sought punitive damages.

After appellants filed a general denial on November 8, 1993, appellees made efforts to arrange a settlement or to take depositions in the case. When no response was received, appellees sent appellants a deposition notice to Ibbi Ndatah, both individually and as representative of Arit, for December 14, 1993. Included in the notice was a duces tecum list requesting information crucial to the appellees' case. Counsel for appellants received notice of this deposition on December 7, 1993.

On the date of the deposition, neither Ndatah nor counsel for the appellants appeared. Appellees filed the first motion to compel on December 20, 1993. The hearing on the motion was set for February 4, 1994.

On the date of the hearing, appellants filed a motion for continuance of the hearing due to the illness of their attorney. Counsel for appellees opposed the motion. The trial court instructed counsel for the appellants to

obtain an agreed date for the holding of the deposition. Three days later, the parties agreed to take Ndatah's deposition on February 16, 1994.

The day before the scheduled deposition, appellants' counsel requested the deposition be rescheduled because Ndatah had not had sufficient time to gather the documents. These documents were the same as those attached to the original deposition notice for December 2, 1993. Appellees' counsel agreed to reschedule the deposition for February 22nd. On February 21st, appellants' counsel called to cancel the deposition because Ndatah was sick.

On February 23, 1994, the appellees filed a second motion for sanctions. The hearing on the motion was set for March 11, 1994, at 2:00 p.m. On March 10th, appellants' counsel called the appellees' attorney. He asked to agree to an order in lieu of appearing at the hearing scheduled the next day. The parties agreed to an order, which required Ndatah to appear on March 23rd to give his deposition, and sanctioned the appellants $500.00 to be paid by 5:00 p.m. on March 21st. The counsel for appellees agreed to sign a facsimile copy of the order, to return the signed order via fax, and to mail the faxed order bearing his original signature. Appellees' counsel received the signed, faxed copy, but never received the order bearing his original signature. The agreed order was signed by the trial court on March 22, 1994.

Despite a court order to be deposed at 10:00 a.m. on March 23rd, Ndatah did not appear until 10:45 a.m. The deposition was continued until a later date because Ndatah did not bring all the documents requested in the notice duces tecum. The deposition was

to be reconvened on April 7th at 10:00 a.m. On April 7th, after waiting twenty minutes for Ndatah to appear, both counsel for appellants and counsel for appellees left. Ndatah arrived at 10:45 a.m. As for the $500.00 for attorney's fees, Ndatah ultimately made the payment as agreed, but failed to meet the agreed deadline.

Appellees filed a third motion for sanctions on April 8, 1994. On April 27, 1994, the trial court entered an order granting the motion for sanctions, which struck the appellants' pleadings, denied them leave to file any additional pleadings, and awarded a judgment in favor of the appellees. The final judgment was signed on April 29, 1994, and the appellants filed a Motion for New Trial on May 31, 1994. This motion was denied after a hearing on the merits on July 8, 1994.

## MERITS OF APPEAL

■ Appellants' first and second points of error complain the trial court erred in striking the appellants' pleadings, denying them leave to file any additional pleadings, and entering judgment against the appellants.[1] Appellants argue the trial court abused its discretion and assert the court's action was unjust.[2]

■ The legitimate purposes of discovery sanctions are threefold: (1) to secure compliance with discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992). The standard of review of a trial court's discovery sanctions is whether the court abused its discretion. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986). The test for abuse of discretion is whether

---

1. Appellants use the term "default judgment" when in this case the judgment was entered after a "death penalty" sanction was imposed where the trial court struck their pleadings. We review appellants' arguments in light of the facts, that is, a post-answer judgment following the imposition of death penalty sanctions.

2. In this point of error as well as others, appellants also assert the findings of the trial court were against the overwhelming weight and preponderance of the evidence. As discussed later, this standard is not applicable to the present case.

Additionally, appellants claim the rulings of the trial court failed to provide due process. However, appellants fail to specify whether this claim relates to a violation of federal or state due process protections. Appellants further fail to explain how they were denied due process. Appellants do not allege they were foreclosed from the courts, or were denied an opportunity to be heard. Because appellants do not cite any authority or factual grounds for their assertions, we have no basis to address the merits of these vague claims. *See* Tex.R.App.P. 74(f).

the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In other words, the reviewing court must determine whether the trial court's action was arbitrary or unreasonable. *See id.* at 242. The scope of review in determining whether the trial court abused its discretion is assayed in light of all the circumstances of the case. *See Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984).

■ The trial court is given broad discretion in imposing discovery sanctions and in choosing the appropriate sanctions. *See Downer,* 701 S.W.2d at 241; *Carr v. Harris County,* 745 S.W.2d 531, 532 (Tex.App.—Houston [1st Dist.] 1988, no writ). In determining whether to impose discovery sanctions, the trial court is not limited to considering only the specific violation for which sanctions are finally imposed, but may consider everything that has occurred during the history of the litigation. *White v. Bath,* 825 S.W.2d 227, 230 (Tex.App.—Houston [14th Dist.] 1992, writ denied), *cert. denied,* —— U.S. ——, 113 S.Ct. 1868, 123 L.Ed.2d 488 (1993). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 242.

3. Paragraph 2(b)(5) of Rule 215 provides in pertinent part:

  If a party or an officer ... of a party ... *fails to comply* with proper discovery requests *or to obey an order* to provide or permit discovery ... the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:

  .    .    .    .    .

  (5) An order *striking out pleadings* or parts thereof, or staying further proceedings until the order is obeyed, or dismissing with or without prejudice the action or proceedings or any part thereof, or *rendering a judgment by default* against the disobedient party.
  TEX.R.CIV.P. 215(2)(b)(5). [Emphasis added.]

4. Paragraph 3 of Rule 215 states in part:

■ Because the court did not specify the provision of Rule 215 of the Texas Rules of Civil Procedure upon which it relied, our review encompasses the portions of the rules applicable to the circumstances. *See Trans-American Nat. Gas Corp. v. Powell,* 811 S.W.2d 913, 916 (Tex.1991) (orig. proceeding). Both paragraph 2(b)(5) and paragraph 3 of Rule 215 are applicable to the circumstances of this case. Paragraph 2(b)(5) of Rule 215 permits a trial court to strike a party's pleadings, to deny leave to file any additional pleadings, and to enter judgment for failure to comply with discovery requests and court orders regarding discovery.[3] Paragraph 3 of Rule 215 allows the court the latitude to impose any combination of the "laundry list" of sanctions authorized under Rule 215(2)(b).[4] The trial court, then, imposed sanctions which are allowed under the rules. *See Drozd Corp. v. Capitol Glass & Mirror Co.,* 741 S.W.2d 221, 224 (Tex.App.—Austin 1987, no writ).

Even though the sanctions imposed are permitted by the Texas Rules of Civil Procedure, the discovery sanctions must also be "just" under the circumstances. *Id.* (citing TEX.R.CIV.P. 215(2)(b) and *TransAmerican,* 811 S.W.2d at 917). In determining whether an imposition of sanctions is just, the Texas Supreme Court in *TransAmerican* determined there must be a direct relationship between the offensive conduct and the sanctions imposed, and the sanctions must not be excessive. *TransAmerican,* 811 S.W.2d at 917.[5]

  If the court finds a party is abusing the discovery process in seeking, making or resisting discovery ... then the court in which the action is pending may, after notice and hearing, impose any appropriate *sanction* authorized by paragraphs (1), (2), (3), (4), *(5)* and (8) of paragraph 2b of this rule.
  TEX.R.CIV.P. 215(3). [Emphasis added.]

5. About the imposition of sanctions, the Texas Supreme Court has specifically stated:

  First, a direct relationship must exist between the offensive conduct and the sanctions imposed. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. It also means that the sanction should be visited upon the offender. The trial court must at least attempt to determine whether the of-

Using this standard, we first examine the relationship between the offensive conduct of appellants and the trial court's order of striking the appellants' pleadings and entering judgment against appellants. The trial court's own explanation in the record of why it believed death penalty sanctions were justified is sufficient to assist our appellate review. *See Chrysler Corp.*, 841 S.W.2d at 852. In this case, the court made express findings in its order granting appellees' motion for sanctions. The trial court specifically found:

1. The [appellees] have been forced to file three (3) separate motions for sanctions due to discovery abuse by the [appellants].

2. The [appellants] failed to file any written response to the First Motion to Compel and for Sanctions.

3. The only response filed by the [appellants] to the [appellees'] Second Motion to Compel and for Sanctions was a Motion for Continuance and a Motion for Protective Order which the [appellants] never set for a hearing.

4. The [appellants] failed to file any written response to [appellees'] Third Motion for Sanctions.

5. [Appellees] first attempted to take the deposition of the [appellants] by Notice of Deposition setting the deposition for December 14, 1993. The [appellants] failed to appear either in person or through their attorney of record.

6. Due to the [appellants'] failure to appear at the scheduled deposition, [appellees] filed the first Motion to Compel and for Sanctions. A Motion for Continuance was filed on behalf of [appellants] by other counsel. Said counsel and [appellees'] counsel agreed to a deposition date for the [appellants] on February 16, 1994.

7. On February 15, 1994, the day before the agreed scheduled deposition, [appellants'] counsel requested a rescheduling because the [appellants] had not had sufficient time since December to gather documents to be produced at the deposition. [Appellees'] counsel agreed to reschedule the deposition for February 22, 1994.

8. On February 21, 1994, [appellants'] counsel once again asked for a rescheduling due to the alleged illness of Mr. Ibbi S. Ndatah, an individual defendant and President of the Corporate Defendant. [Appellees] did not agree.

9. On February 23, 1994, the [appellees] filed the Second Motion to Compel and for Sanctions. Counsel for the [appellants] agreed to an Order and the Court signed its Order on Motion to Compel.

10. [Appellants] failed to pay the attorney's fees in the amount of $500.00 in a timely fashion as ordered by the Court.

11. Although [appellants] did appear at the deposition ordered by the Court, [appellant] Ndatah was 45 minutes late and failed to bring all of the requested documents.

12. The parties agreed to reconvene the deposition on April 7, 1994 and the [appellants] failed to appear.

13. The [appellants] have demonstrated a pattern and history of abuse and disregard for the judicial process and the discovery process.

14. The [appellants] have willfully violated and ignored the orders of this Court.

15. The [appellants] have offered no credible excuse for their repeated and continuous failure to comply with legitimate discovery requests.

16. The information sought by the [appellees] through the deposition of the [appellants] is available only from the [appellants] and is crucial to the [appellees] case.

17. The court has considered the imposition of lesser sanctions, but has concluded that they would be fruitless as shown by the fact that prior and lesser sanctions already imposed have failed to correct or improve [appellants'] conduct.

fensive conduct is attributable to counsel only, or to the party only, or both.

. . . . .

Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.
*TransAmerican*, 811 S.W.2d at 917.

■ Appellants' entire course of action throughout this suit was marked by delay, avoidance and obstruction of process. *See Allied Resources Corp. v. Mo–Vac Serv. Co.,* 871 S.W.2d 773, 780 (Tex.App.—Corpus Christi 1994, writ denied). Striking pleadings without leave to amend and entering judgment may be justified if the discovery abuse has persisted over a long period of time and numerous efforts have been made to obtain compliance. *See Carr,* 745 S.W.2d at 532–33 (citing *Ray v. Beene,* 721 S.W.2d 876, 879 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.)). The sanctions here are visited upon the offenders, both the appellants and their attorney. In the present case, appellants' discovery abuse persisted over a period of several months while appellees' attorney made repeated attempts to obtain the requested discovery. The record reflects a direct relationship between the sanctions imposed and the repeated failure of the appellants to appear for the deposition, in addition to their failure to comply with court orders.

■ Severe sanctions are sometimes necessary to prevent an abusive party from thwarting the administration of justice by concealing the merits of a case. *Braden v. Downey,* 811 S.W.2d 922, 929–30 (Tex.1991). In the presence of a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules, sanctions which are so severe as to preclude presentation of the merits of the case may be assessed. *See TransAmerican,* 811 S.W.2d at 918. Appellants attempted to comply with the discovery requests and appeared at the deposition on March 23, 1994. They also eventually paid the $500.00 as ordered by the court, albeit late. However, eventual compliance is not determinative of whether the sanctions imposed were "just." *Carr,* 745 S.W.2d at 532; *Southern Pacific Transp. Co. v. Evans,* 590 S.W.2d 515, 518 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). In this case the appellants *agreed to* the language in the order sent to the court and signed by the court on March 22, 1994, which states: "IT IS FURTHER ORDERED that in the event the sanction of $500.00 is not paid in *strict*

accordance with these orders, then upon the filing with this Court of an Affidavit and an appropriate order of that effect by [appellees'] counsel, [appellants'] pleadings *shall be ordered stricken without a hearing and without prior notice to [appellants].*" [Emphasis added.] Appellants do not dispute the fact that they did not pay the appellees $500.00 "on or before 5:00 o'clock p.m., March 21, 1994," as required by the agreed order. Appellants were warned by the court that their pleadings would be ordered stricken for failure to comply with the order. In this case where the appellants knew of the consequences for their repeated failure to comply, it cannot be said that the sanctions were excessive. We also note that less stringent sanctions to promote compliance were tried and failed in this case.

The trial court followed the guiding rules and principles of law in determining what sanctions were appropriate in this case. The trial court did not abuse its discretion when it sanctioned appellants for an abuse of the discovery process under Rule 215. We overrule appellants' first and second points of error.

■ The third point of error presents appellants' argument that the trial court abused its discretion by not granting appellants' motion for continuance filed on April 29, 1992. Appellants allege they were not provided a copy of the court's order granting sanctions signed on April 27, 1994. Appellants assert that, because they allegedly did not receive the trial court's order, they were not afforded an opportunity to object to the court's findings.

■ The trial court has broad discretion to grant or deny continuances. *Hernandez v. Heldenfels,* 374 S.W.2d 196, 202 (Tex. 1963). The decision of a trial court will not be disturbed on appeal unless the record discloses a clear abuse of discretion. *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986). In reviewing whether a trial court abused its discretion, the appellate court only decides whether the trial court's action was arbitrary and unreasonable. *Landry v. Travelers Ins. Co.,* 458 S.W.2d 649, 651 (Tex.1970). It should appear clearly from the record that

there has been a disregard of the rights of a party before the appellate court reverses the trial court's discretionary ruling. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex.1986).

The record in this case does not disclose an abuse of discretion. Appellants' oral motion for continuance is a statement to the court that he was "not ready to proceed" with the hearing to prove up damages. Appellants cite no authority that reveals a trial court is required to grant a continuance in order to allow them time to object to the court's "findings" set forth in an order granting sanctions before the court conducts a "prove-up" evidentiary hearing on damages. The record indicates counsel for appellants had notice of this prove-up hearing. Counsel for appellants attended the hearing on the Third Motion for Sanctions, and was aware the court granted the motion. Appellants' counsel was also present when the court announced that appellees' counsel would be scheduling a time for a prove-up on damages.

▪ The hearing was scheduled for April 29, 1994. At the hearing, counsel for appellees presented evidence of the facsimile transmission sent to counsel for appellants on April 25, 1994, informing him of the hearing date of April 29, 1994. Under Rule 21a of the Texas Rules of Civil Procedure,[6] if notice of the hearing is properly sent by facsimile a presumption arises that the notice was properly received by the addressee. *See Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex.1987); Tex.R.Civ.P. 21a. The record reflects the appellants received notice of the hearing, and counsel for appellants did not provide rebutting evidence that the facsimile was not received other than a statement that "It's very possible that [counsel for appellees] did fax it and somehow it may have slipped through the cracks at my office."

The trial court was in the best position to make a determination whether to grant appellants' request for a continuance or to proceed with the prove-up hearing on damages. Appellants had notice of the hearing date, and the hearing date was not the only time at which the appellants could have made objections to the court's findings of fact contained within the court order on the appellees' third motion for sanctions. Therefore, the court did not abuse its discretion in not granting a continuance in order to allow appellants time to object to the court's findings before conducting the prove-up hearing for damages. We overrule appellants' third point of error.

As their fourth and fifth points of error, appellants argue the trial court erred by not granting appellants' Motion for New Trial. Appellants assert in the fourth point of error that the action by the court was against the great weight and preponderance of the evidence. Appellants also argue their errors were not intentional, or the result of conscious indifference, but were due to mistake or accident. In the fifth point of error, appellants further claim they were denied due process and the opportunity to present meritorious defenses, and the granting of a new trial would have occasioned no delay or injury to appellees' case. These arguments are misguided in the applicable law.

▪ The first assertion, that the action by the court was against the great weight and preponderance of the evidence, fails to address the nature of the case at bar. A point of error challenging findings of the court as being against the great weight and preponderance of the evidence applies in circumstances where the court addresses the merits of a case. This is not an appeal from a case tried on the merits, but a case where the court entered judgment after ordering the appellants' pleadings to be stricken due to their failure to comply with discovery re-

---

**6.** Rule 21a of the Texas Rules of Civil Procedure, which describes the methods of service, provides in pertinent part:

> Every notice required by these rules ... and except as otherwise expressly provided in these rules, may be served by delivering a copy to the party to be served, or the party's duly authorized agent or attorney of record, as the case may be ... by telephonic document trans-

fer to the recipient's current telecopier number.... A certificate by a party or an attorney of record, or the return of an officer, or the affidavit of any person showing service of a notice shall be prima facie evidence of the fact of service. Nothing herein shall preclude any party from offering proof that the notice or instrument was not received....

Tex.R.Civ.P. 21a.

quests. Moreover, an "against the great weight and preponderance of the evidence" argument applies only when the party *with* the burden of proof challenges the factual sufficiency of the evidence to support the fact finder's "failure to find" in its favor. Here, the appellants, as defendants, did not have the burden of proof. *See Hickey v. Couchman*, 797 S.W.2d 103, 110 (Tex.App.—Corpus Christi 1990, writ denied).

■■■■ To complain of the adverse finding in this case, the appellants, as the party without the burden of proof on fact finding, should phrase their point of error as "insufficient evidence" to support the finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). Nonetheless, because the Texas Supreme Court has adopted a liberal rule of reference to the construction of points of error contained in appellate briefs, an inappropriately phrased point of error should be construed as raising a challenge to the factual sufficiency of the evidence where the error is "readily apparent from the argument briefed." *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633 (Tex.1986) (op. on reh'g); *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112, 114 (Tex.1976); TEX.R.APP.P. 74(p). Therefore, we will review a complaint that the trial court erred in denying a motion for new trial due to the court's action being against the great weight and preponderance of the evidence as a challenge to the sufficiency of the evidence to support the trial court's findings. *See* TEX.R.CIV.P. 324(b)(2).

■■■■ A trial court has wide discretion in granting a new trial, and the trial court's discretion will not be disturbed on appeal absent a showing of manifest abuse of discretion. *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex.1988). In reviewing an insufficiency of the evidence challenge, the court of appeals must first consider, weigh, and examine all the evidence that supports and that is contrary to the jury's determination. *Sosa v. City of Balch Springs*, 772 S.W.2d 71, 72 (Tex.1989). Having done so, the court should set aside the verdict only if the evidence standing alone is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Our review of the evidence in the case reveals the trial court did not abuse its discretion in denying the motion for new trial where the court's findings as listed in its order dated April 27, 1994, are supported elsewhere in the record and, as previously discussed, the sanctions were appropriate based upon the rules and principles guiding the imposition of sanction. We overrule appellants' fourth point of error.

■■■■ The appellees also present other arguments regarding the lack of intent related to their errors, their ability to present meritorious defenses, and the absence of delay or injury to appellees' case. These arguments would apply to a case in which the complaining party seeks an equitable motion for new trial due to a default judgment case, for example, in a situation where the party did not file an answer to a petition or where the party did not receive notice of a summary judgment hearing date. *See Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939); *Costello v. Johnson*, 680 S.W.2d 529, 530 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). In those types of situations, a party is entitled to a new trial where: (1) the failure to answer was not intentional or the result of conscious indifference, but was due to accident or mistake; (2) the motion for new trial alleges a meritorious defense; and (3) the motion is filed at a time when the granting of a new trial will not occasion delay or work other injury to the plaintiff. *Bank One, Texas, N.A. v. Moody*, 830 S.W.2d 81, 82–83 (Tex.1992); *Craddock*, 133 S.W.2d at 126.

Here, the court struck the appellants' pleadings without the opportunity to amend. This case is not a "default judgment" case of the type that the *Craddock* test was meant to address. The appellants' case, then, does not present facts which would correspond to the point they have asserted on appeal. The argument under the fifth point of error does not sufficiently direct the court's attention to the complaint made regarding an issue in the record of the instant case. TEX.R.APP.P. 74(d). As such, appellants' fifth point of error presents nothing for our review.

**176**

Accordingly, we affirm the judgment of the trial court.