NO. 07-10-0442-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 7, 2011
_____

KURT TORSTER and GEA GROUP, AG,

Appellants

v.

PANDA ENERGY MANAGEMENT, LP, PLC II, LLC,
and PANDA ENERGY INTERNATIONAL, INC.,

Appellees
_____

FROM THE 222nd DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CI-08J-085; HONORABLE ROLAND SAUL, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

What we have here is an interlocutory appeal from an order denying the motion of Kurt Torster and GEA Group, AG requesting that the cause be arbitrated per the Federal Arbitration Act, *i.e.* 9 U.S.C. §§1-16. The dispute between the parties has travelled a rather long and winding road. Originally initiated in state court, it sojourned through federal territories via removal and bankruptcy statutes. Ultimately, the United States District Court for the Northern District of Texas, Amarillo Division, sent it home to

Deaf Smith County. In doing so, that court thoroughly discussed the nature of the controversy and lawsuit in its order remanding the cause. *See Panda Energy Mgt., L.P., et al v. GEA Group, A.G., et al*, No. 2:08-CV-208-J (N.D. Tex. April 12, 2010) (Order Granting Plaintiffs' Motion to Remand). We thank the court for doing so and liberally borrow for use here many of its words. But, before continuing, we inform the litigants that the trial court's decision to forego arbitration is affirmed.

*Background*

Kurt Torster is a resident of Houston. Panda Energy Management, LP, PLC II, LLP, and Panda Energy International, Inc. (collectively referred to as Panda Energy or Panda) sued Torster for fraud and negligent misrepresentation relating to representations he made during March of 2005, and before July 13, 2005, directly to Panda Energy. The latter alleged that they were investors who relied on Torster's representations in deciding to invest millions in a proposed ethanol conversion project in Hereford, Texas, and in three or four other projects that Panda Energy was trying to develop.

Torster was CEO of non-party Lurgi PSI, Inc. at the time the representations were made. Panda Energy alleged that his representations were made falsely and for the purpose of recklessly building up a list of valuable business contracts which were "booked" (recorded on company books as profitable executed contracts). They also alleged the existence of a fraudulent scheme where more projects were booked than could be timely begun or successfully completed by Torster or GEA, or GEA's wholly owned subsidiary, Lurgi PSI, Inc. Panda Energy also alleged that the scheme or plan was to book as many contracts on Lurgi's books as possible, and for Lurgi to then be

2

sold off to inexperienced buyers for the immediate realization of profit to Torster and GEA. Furthermore, at the time Torster's representations were made, GEA had existing, but undisclosed, plans to reorganize and divest Lurgi's less profitable lines of work, that is, the booked ethanol conversion projects, according to Panda.

As part of the inducement to invest in and eventually execute the engineering design and construction contracts, GEA issued a guaranty of performance for Lurgi's performance on the Hereford plant contract. It was also said that by the time the guaranty was called upon, GEA had already sold its European and U.S. construction subsidiaries to buyers who were not experienced in such projects. GEA allegedly knew that it would have to rely entirely on the promises of the inexperienced buyers to complete the projects and backstop GEA's guarantee, but accepted that future risk to realize immediate profits. When GEA refused to honor its guaranty, the Hereford plant was one project that suffered construction delays, cost overruns and other problems, was a loss to investors, and was ultimately not completed causing millions of dollars in losses to Panda for which losses Torster and GEA were liable.

It was further alleged by Panda that, as a result of the scheme, Lurgi PSI, Inc., and its successor in interest, failed to construct over eight ethanol plants, including the one at issue here. The fraud purportedly worked because GEA booked a contract once it came to financial closure without regard to contingencies that would arise in the contract's performance. Torster was also "handsomely rewarded with a bonus that depended only on financial closure," that is, the project being booked for a paper profit upon execution of the contract, and that "failure to actually construct was of no moment to" Torster or GEA. Additionally, Torster made the alleged misrepresentations because

3

of bonuses he realized; so, he had a personal financial motive or incentive to book the executed contracts and receive his portion of the scheme's reward.

Panda Energy also alleged that GEA and Torster promoted ethanol conversion plants directly to it with assurance of GEA's and Lurgi's competence to engineer and build the plants and thereby induced the investors to form and fund a project company (PHE) that would secure additional financing to hire Lurgi. But for the fraud committed, says Panda, the latter would never have entered the ethanol business with Lurgi.

As for the matter of arbitration, that topic arose from a clause in the construction contract executed between PHE and Lurgi.[1] That none of the litigants to this proceeding were signatories to the PHE/Lurgi agreement is undisputed. Nonetheless, Torster and GEA contend that the clause encompassed the controversy before us because the dispute related to the construction of the Hereford ethanol plant.

*Authorities and Their Application*

Whether the trial court erred in refusing to order Panda, Torster, and GEA to arbitration per the Federal Arbitration Act depends on whether it abused its discretion. *Sidley, Austin, Brown, & Wood, L.L.P. v. J.A. Green Dev. Corp.,* 327 S.W.3d 859, 863 (Tex. App.–Dallas 2010, no pet.) (stating that "we have not addressed the standard of review applicable to such appeals [under the Federal Arbitration Act]. However, on appeals of orders denying arbitration under the Texas Arbitration Act (TAA), we apply a no-evidence standard to the trial court's factual determinations and a de novo standard to legal determination . . . . This standard is the same as the abuse of discretion

---

[1]The clause read as follows: ". . . any Dispute shall be settled exclusively and finally by binding arbitration . . . ." Moreover, the term "dispute" was defined as "any dispute, controversy or claim between the Parties [to the contract] arising out of or relating to this Agreement, or the breach, termination or invalidity thereof . . . ."

4

standard of review and we will apply that standard of review to interlocutory appeals under section 51.016"). Moreover, a trial court abuses its discretion when its decision deviates from guiding rules and principles and is otherwise arbitrary, capricious and unreasonable. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

In a nutshell, we are being asked to decide if it was wrong to forego the arbitration of claims and causes of action arising from conduct occurring prior to the execution and independent of the PHE/Lurgi contract and between parties who never signed that document. Those circumstances liken to the situation described in the very recent opinion of the Fifth Court of Appeals in *Weaver & Tidwell, LLP. v. The Guar. Co. of N. Am. USA*, No. 05-10-0557-CV, 2011 Tex. App. LEXIS 1285 (Tex. App.–Dallas, February 23, 2011, no pet. h.). There, the trial court also refused to order the parties to arbitration. Weaver and Tidwell thought that was error because they had executed various contracts with another company, J&V, to perform audits of J&V, and those agreements contained arbitration clauses. The audits were required by the Texas Department of Transportation as a condition of contracting with the department to install lighting and signal systems. Also required by the department were performance bonds which bonds were provided by The Guarantee Co. And, in deciding to provide those bonds, The Guarantee Co. reviewed and relied upon the audits of J&V completed by Weaver & Tidwell. Needless to say, J&V defaulted on its agreements with the department, which defaults triggered The Guarantee Co.'s duty to perform. Thereafter, J&V sued Weaver & Tidwell, alleging various causes of action sounding in fraud, breached fiduciary duty, and negligence. That suit was sent to arbitration per the

contracts between the two entities. In a separate proceeding, The Guarantee Co. sued Weaver & Tidwell for negligently performing the audits it relied on and for providing false information about J&V in those audits. Though Weaver & Tidwell asked the trial court to also forward the Guarantee Co. suit to arbitration, the court did not. That decision was upheld on appeal.

In ruling as it did, the reviewing court in *Weaver & Tidwell* considered the nature of the cause of action being pursued, whether The Guarantee Co. was attempting to enforce rights arising or acquire a benefit under the Weaver/J&V auditing contract (as a subrogee or third-party beneficiary), and whether The Guarantee Co. was a signatory to the Weaver/J&V auditing agreements. Because The Guarantee Co. did not sign the auditing agreements, was not seeking to obtain a benefit arising from those agreements as either a subrogee or third-party beneficiary, and was pursuing a tort claim as opposed to one for breach of the Weaver/J&V contracts, it was not bound by the arbitration clauses at issue, according to the court. *Id.* at \*4-6. The same is no less true here.

Panda Energy did not sign the PHE/Lurgi contract (*i.e.* the accord containing the arbitration clause). Nor is it pursuing (as a subrogee, third-party beneficiary, or in any other capacity) any entitlement or right arising from the contract or even prosecuting a cause of action sounding in breached contract. Rather, the events underlying its claim arose prior to the execution of the PHE/Lurgi document and involved purported misrepresentations uttered and deceptions planned by Torster and GEA independent of that agreement. To hold under those circumstances that the independent tort claim urged by Panda Energy is somehow encompassed by an arbitration clause in an

6

agreement none of the parties at bar signed would be to ignore the well-reasoned opinion and ruling of the Fifth Court in *Weaver & Tidwell* and the authorities cited therein.  That we opt not to do.  Accordingly, we 1) conclude that the trial court did not abuse its discretion by refusing to direct the litigants to arbitration, 2) overrule all issues of Torster and GEA, and 3) affirm the trial court's order.


        Brian Quinn
        Chief Justice