In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00254-CV
_____

SANDRA KAY EMBESI, Appellant

V.

CHARLES RAY HALL, Appellee

On Appeal from the 279th District Court
Jefferson County, Texas
Trial Cause No. F-204,290-A

MEMORANDUM OPINION

In her sole issue on appeal, appellant Sandra Kay Embesi complains that the trial court abused its discretion by denying her petition for post-divorce division of marital property that Embesi contends was not divided in the agreed final decree of divorce. We affirm the trial court's order.

BACKGROUND

Embesi and Charles Ray Hall were married in 1974 and were originally divorced in November 2008, when the trial court entered an agreed final decree of

1

divorce that divided the parties' marital property, including Hall's retirement benefits. Embesi filed a bill of review, asking the trial court to reopen the case and enter a post-divorce property settlement agreement. In 2013, the trial court granted the bill of review and vacated the November 2008 final decree of divorce for the purpose of effectuating the intent of the parties' new settlement agreement. In September 2013, the trial court conducted a hearing and entered a second final decree of divorce incorporating the parties' post-divorce property settlement agreement, in which Hall agreed to pay Embesi an additional $36,000 in monthly installments of $3000, as well as a lump sum payment of $150,000 from his ExxonMobil Savings Plan. During the hearing, Embesi testified that she understood the terms of the parties' settlement agreement and that it was a fair and equitable division of the parties' marital estate. The trial court entered a QDRO that was approved by the parties and which awarded Embesi $150,000 from Hall's ExxonMobil Savings Plan.

In March 2014, Embesi filed another petition for post-divorce division of property, claiming that she was entitled to a division of Hall's ExxonMobil Pension Plan. Hall answered Embesi's petition and argued that the division of the marital estate had been litigated, settled, and confirmed, and that Embesi was not entitled to any further relief. In May 2015, Hall filed a traditional motion for summary

2

judgment, arguing that Embesi's post-divorce attempt to divide retirement funds was barred by res judicata. The trial court denied Hall's motion for summary judgment.

In June 2017, the trial court conducted a hearing, during which Embesi's counsel requested that the trial court award Embesi a disproportionate division of Hall's pension plan, which Embesi's counsel argued was an undivided asset that Hall failed to disclose. Hall's counsel argued that the purpose of the prior bill of review was to consider his savings plan and pension plan, and both were considered in the 2013 divorce decree. Hall testified that he had a savings plan and a pension plan with ExxonMobil before he retired in February 2016. Hall testified that when he retired, he had approximately $400,000 in his savings plan and $900,000 in his pension plan. Hall explained that he rolled over the money in his savings plan and pension plan into an account at an accounting firm. According to Hall, he had already paid Embesi the $150,000 that he had agreed to pay out of his savings plan when he rolled the money over.

Hall testified that Embesi was not awarded any portion of the $900,000 in his pension plan in the 2013 divorce decree. Hall explained that based on his understanding of the settlement agreement, he was awarded his entire pension plan. According to Hall, Embesi knew that he had a savings plan and a pension plan, and the parties had agreed that his payment of $186,000 to Embesi would settle any

disputes regarding both plans. Hall testified that Embesi had agreed to have her portion of the retirement benefits paid out in cash from the savings plan, instead of having to wait to receive money from the pension plan.

Hall further testified that from 2008 to 2010, he paid Embesi $4000 per month. Hall explained that he had agreed to the bill of review to allow the court to award Embesi more money even though the dispute concerning his retirement arose after any statute of limitations would have run, because Hall thought it was the right thing to do. Hall testified that Embesi was represented by counsel, and he thought that she was happy with the parties' 2013 settlement agreement.

Tim Satre, a certified financial planner and a certified divorce financial analyst, testified that the savings plan referenced in the 2013 divorce decree is not the ExxonMobil savings plan. According to Satre, the divorce decree does not specifically address either of Hall's pensions that are referenced on Hall's statement of benefits from ExxonMobil. Satre testified that he has prepared QDROs for ExxonMobil, and he has had many clients whose spouses have not known about the details of their retirement plans. Satre explained that details concerning the ExxonMobil retirement plan are "sketchy sometimes." Satre testified that Hall has a pension plan and a defined benefit plan with ExxonMobil. Satre explained that because the employee does not contribute to a defined benefit plan, it would not be

4

reflected on a W-2 or a tax return. On cross-examination, Satre testified that he did not know the terms of the parties' settlement agreement. Satre further testified that the parties' 2013 divorce decree does not mention the pension plan, but the 2008 divorce decree awards the pension plan to Hall.

Embesi testified that she wanted the trial court to divide the pension plan and that she never agreed to give up her rights or to award the pension plan to Hall. Embesi testified that Hall told her he had a retirement account, but Hall did not disclose the details. According to Embesi, Hall led her to believe that he had one retirement account, and Hall never disclosed that he had a pension plan. Embesi testified that Hall has not been truthful regarding his assets. On cross-examination, Embesi agreed that an email from her attorney, who represented her in negotiating the 2013 settlement agreement, indicated that her attorney knew that Hall had two separate retirement accounts, a pension and a savings plan, prior to the parties entering the agreement and proving up the divorce decree. However, Embesi claimed that her attorney never told her about the pension plan, and that she first learned about the pension plan when she took the 2013 divorce decree to the accounting firm that Hall used. According to Embesi, the pension plan was not divided in the 2013 divorce decree. However, Embesi agreed that if her attorney knew about the pension plan before she signed the divorce decree, Hall did not

5

conceal the pension plan. The trial court noted that the 2008 divorce decree alluded to the pension plan, and that Embesi accepted the settlement amount in the parties' 2013 negotiated settlement agreement, making the issue one of contract.

The trial court denied Embesi's petition for post-divorce division of property. Embesi requested findings of fact and conclusions of law. The trial court found that Hall's pension plan was divided in the 2013 divorce decree and concluded that Embesi's petition for post-divorce division of property was denied. Embesi appealed.

## ANALYSIS

In one issue on appeal, Embesi complains that the trial court abused its discretion by denying her petition for post-divorce division of property. Embesi maintains that she proved that Hall's pension plan was not divided by the 2013 divorce decree. According to Embesi, Satre's testimony shows that, based on the language of the 2013 divorce decree, the pension plan was not awarded to either party.

The Texas Family Code provides a procedure for the trial court to divide property not divided or awarded to a spouse in a final decree of divorce. Tex. Fam. Code Ann. §§ 9.201, 9.203 (West 2006). However, a trial court may not "amend, modify, alter, or change the division of property made or approved in the decree of

divorce . . . ." *Id.* § 9.007(a) (West Supp. 2017). We review a trial court's ruling on a post-divorce division of property under an abuse of discretion standard. *See In re Marriage of Ford*, 435 S.W.3d 347, 350 (Tex. App.—Texarkana 2014, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). In determining whether the trial court abused its discretion, we view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of its ruling. *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied.).

In a bench trial, the trial court is the sole judge of the credibility of witnesses. *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The trial court's finding that Hall's pension plan was divided in the divorce decree is subject to a legal sufficiency review under the same standards applied in reviewing evidence supporting a jury's answer. *See id.* We review the trial court's conclusion that Embesi is not entitled to post-divorce division of Hall's pension plan de novo. *See id.* Because Embesi had the burden to prove that Hall's pension plan was not addressed or divided in the 2013 agreed divorce decree, she had to supply evidence establishing her contention as a matter of law. *See id.* at 349 (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)). Absent such a showing, no

7

ground exists for reversing the trial court's ruling denying Embesi's petition for post-divorce division of property. *See id.*

A marital property agreement that is incorporated into a final decree of divorce is treated as a contract, and its construction is governed by the law of contracts. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986). When construing an agreement incident to divorce, a trial court must look at the intent of the parties as manifested in the written agreement. *Bishop v. Bishop*, 74 S.W.3d 877, 879-80 (Tex. App.—San Antonio 2002, no pet.). The determination of whether a divorce decree is ambiguous is a question of law, and if the decree is subject to more than one interpretation, the trial court reviews the record and the decree to aid in correctly interpreting the decree. *Brown*, 236 S.W.3d at 350.

The record shows that both parties presented evidence concerning the negotiation of the 2013 property settlement agreement and that the trial court considered the divorce decree and the circumstances surrounding the formation of the property settlement agreement in finding that Hall's pension plan was divided in the 2013 divorce decree. Although Embesi claimed that she did not know that the pension plan existed when she agreed to the 2013 divorce decree and that Hall had defrauded her by failing to disclose the pension plan, the record shows that Embesi's counsel referenced and considered the pension plan during negotiations. The record

8

shows that the trial court considered the divorce decree and the record, including emails regarding the negotiation of the property settlement agreement, in determining the intent of the parties as manifested in the divorce decree. *See Brown*, 236 S.W.3d at 350; *Bishop*, 74 S.W.3d at 879-80. Because the record shows that Hall's retirement plan and pension plan were considered during the negotiation of the parties' property settlement agreement, the trial court could have reasonably concluded that the parties intended that Embesi would not be awarded any of the pension plan and that Hall would be awarded all of it. *See Brown*, 236 S.W.3d at 350.

Because Embesi failed to prove that Hall's pension plan was not addressed or divided in the 2013 divorce decree, no ground exists for reversing the trial court's ruling. *See id.* Viewing the evidence in a light most favorable to the trial court's ruling, we conclude that the trial court did not abuse its discretion by denying Embesi's petition for post-divorce division of property and finding that Hall's pension plan was divided in the 2013 divorce decree. *See Ford*, 435 S.W.3d at 350; *Holley*, 864 S.W.2d at 706. We overrule Embesi's sole issue and affirm the trial court's ruling.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

9

Submitted on June 26, 2018
Opinion Delivered July 26, 2018

Before McKeithen, C.J., Horton and Johnson, JJ.