In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00026-CV
_____

IN THE INTEREST OF Z.C.R.M.

On Appeal from the 317th District Court
Jefferson County, Texas
Trial Cause No. C-234,693

## MEMORANDUM OPINION

In this appeal from an order in a suit affecting the parent-child relationship, Z.C.R.M.'s father, *Mark*, complains the trial court abused its discretion by restricting Mark's possessory rights "more severely than necessary to protect the child's best interest." In a second issue, Mark argues the trial court erred by restricting his "possession and access to

the child by reasons that are not supported by sufficient evidence on the record."[1] Finding no error, we will affirm.

Background

In March 2019, a then ten-month-old Z.C.R.M., *Zeke*, was hospitalized and treated for a broken jaw that he suffered while in his mother's care. In April, the Department of Family and Protective Services filed a "Petition for Protection of a Child, For Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship," alleging Zeke faced "an immediate danger to [his] physical health or safety," or had "been the victim . . . of neglect or . . . abuse." In paragraph thirteen of the form petition, the Department asked the trial court to name the Department as Zeke's permanent managing conservator if Zeke could not be reunified with one of his parents, or if he could not be permanently placed with a relative or some other suitable person.

The same day the Department filed its petition, the trial court signed an order authorizing the Department to take Zeke into its custody. In the order, the trial court named the Department as Zeke's temporary

---

[1]To protect the identity of the minor, we use pseudonyms to refer to the minor, to members of his family, and to the foster parents. *See* Tex. R. App. P. 9.8(b)(2).

managing conservator. The affidavit supporting the removal, signed by a caseworker employed by the Department, reflects the hospital where Zeke was examined determined that Zeke had a fractured jaw, suffered fractures to two of his ribs, which had already healed, and had fractures that were healing in both of his shins. During the hearing on the emergency petition, the Department's attorney told the trial court the Department had no reason to suspect that Mark had any involvement in causing the injuries Zeke suffered that the caseworker listed in the affidavit the Department filed to support its emergency petition seeking temporary custody of Zeke.

Later that month, the trial court conducted a full adversary hearing. During the hearing, Zeke's father, *Mark*, testified he had only seen Zeke once, just after Christmas in 2018.[2] Following the hearing, the trial court signed an order requiring Zeke's mother and Mark to follow family service plans.[3] The following week, Mark agreed to the

---

[2]In the trial, however, we note that Mark testified he had seen Zeke three times before the Department removed him from his mother's home.

[3]*See* Tex. Fam. Code Ann. § 263.106 (Court Implementation of Service Plan). The order reflects the trial court indicated it would consider placing Zeke with Mark in his home following the results of an inspection by the Department of Mark's home.

Department's proposal that he have supervised visitation with Zeke, rules which gave him the right to see Zeke one hour a week at a Department office under the supervision of a member of the Department's staff.

After signing the agreement, Mark began working on the various requirements of his family service plan. In March 2020, Governor Abbott declared a state of disaster due to the imminent threat of the Covid-19 pandemic, which delayed the trial court's ability to dispose of the case within one year of the date the Department filed suit. And in March 2020, Zeke's foster parents, *Tina* and *Ray*, filed a Petition in Intervention, alleging Mark's parent-child relationship with Zeke should be terminated on four grounds: (1) he left the child alone without support; (2) conduct endangerment; (3) condition endangerment; (4) failed to support Zeke after contumaciously refusing to submit to a reasonable and lawful order of a court under Subchapter D, Chapter 261.[4]

In November 2021—on the morning the case was to be heard by the jury—Mark testified and asked the court to enter the settlement agreement he reached with all parties naming him as Zeke's possessory

---

[4]*See* Tex. Fam. Code Ann. § 161.001(b)(1)(C), (D),(E), and (I).

conservator, explaining that he understood that by going forward with the trial the jury might decide to terminate his parental rights to Zeke. Mark also acknowledged during the settlement hearing that he understood he remained obligated to support Zeke as Zeke's possessory conservator. For their part, Tina and Ray testified they agreed to the settlement's terms, which named them as Zeke's permanent managing conservators with Mark as Zeke's possessory conservator. All parties acknowledged they understood the trial court would conduct a bench trial to resolve the remaining issues that were left on questions about Mark's visitation. After the parties announced the agreement, the witnesses explained they understood and agreed to the settlement's terms, the trial court announced the court would approve the agreement, appointed Tina and Ray as Zeke's sole managing conservators, and appointed Mark as Zeke's possessory conservator.

After the trial court dismissed the jury, the trial court conducted an evidentiary hearing to resolve the remaining issues, which concerned the conditions (if any) under which the trial court would require Mark to exercise his possessory rights. The issues the parties tried to the court focused on whether Mark should have unsupervised visitation with Zeke.

5

Four witnesses testified in the hearing and expressed the opinion that Mark's visits should remain supervised, explaining that Zeke and Mark did not yet have a bond. These witnesses were (1) the Child Protective Services Supervisor in charge of Zeke's case, (2) the licensed professional counselor who observed Zeke and Mark during ten of their supervised visits, (3) Tina, and (4) Ray. Mark was the only witness who testified that he and Zeke have a bond. When Mark's attorney asked Mark "[d]o you feel like you have a bond with your child[,] Mark responded: "Yes, I do."

Two months after the hearing, the trial court signed a final order, which addresses Mark's rights. In the final order, the trial court terminated mother's parent-child relationship with Zeke, named Tina and Ray as Zeke's sole managing conservators, and appointed Mark as Zeke's possessory conservator. In the brief that Mark filed to support his appeal, he argues in two issues that the trial court abused its discretion in ordering supervised visitation. The trial court, when explaining why it decided to require supervised visitation, stated in its order that

> . . . credible evidence has been presented that the psychological situation, cognitive weakness, lack of parenting ability, lack of relationship with the child, and lack of

6

adequate bond between [Mark] and the child necessitates that his periods of possession be restricted.[5]

After the trial court signed the order, Mark asked the trial court to provide the parties with written findings. When the trial court did so, the trial court noted that the licensed professional counselor who testified in the trial observed Mark and Zeke during their sessions and expressed her opinion that they lacked a bond. The licensed professional counselor also observed that Mark had "been absent from Zeke's life" before the Department took Zeke into custody. Based on the testimony of the witnesses and evidence presented to the court in the proceedings, the trial court found that Mark "failed to bond with the child during the pendency of the case."

On appeal, Mark argues the supervised possession order is more restrictive than necessary to protect Zeke's best interest and the restrictions on his rights of possession and access to Zeke lack sufficient support in the record.

---

[5]Under the order, Mark may see Zeke in supervised visits every other Sunday and every other Thursday for two hours, and on additional days at times "mutually agreed to in advance by the parties."

## Standard of Review

"In family law cases, the traditional sufficiency standard of review overlaps with the abuse of discretion standard; thus, legal and factual sufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court had sufficient evidence to exercise its discretion."[6] And since trial courts have wide latitude in deciding issues that serves the child's best interest when it involves matters like custody, control, possession, and visitation, the decision the trial court made is reviewed on appeal for abuse of discretion.[7] A trial court abuses its discretion when it acts arbitrarily or without reference to any guiding rules or principles.[8]

In reviewing the trial court's ruling, we note the Legislature placed the focus on the child's best interest in resolving suits filed by parties that affect the parent-child relationship.[9] In evaluating the trial court's

---

[6]*In re E.R.A.*, No. 09-20-00042-CV, 2021 Tex. App. LEXIS 2026, at *11 (Tex. App.—Beaumont Mar. 18, 2021, no pet.) (mem. op.).

[7]*See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *In the Interest of T.G.*, No. 09-16-00250-CV, 2016 Tex. App. LEXIS 12996, at *13 (Tex. App.—Beaumont Dec. 8, 2016, no pet.) (mem. op.).

[8]*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *In re E.R.A.*, 2021 Tex. App. LEXIS 2026, at *11.

[9]Tex. Fam. Code Ann. § 153.002.

best-interest finding, we look to the non-exclusive list of factors the Texas Supreme Court identified in *Holley v. Adams*.[10] We also note the terms of an order restricting a parent's right to possession or access "may not exceed those that are required to protect the best interest of the child."[11]

Analysis

The question we must decide to resolve Mark's issues is whether the trial court abused its discretion by finding it was in Zeke's best interest for his visits to be supervised given that the trial court made its decision when Zeke was not yet three-years-old when the order was signed.

---

[10]In *Holley*, the Texas Supreme Court used the following non-exclusive factors to review a court's best-interest finding:
- the child's desires;
- the child's emotional and physical needs, now and in the future;
- the emotional and physical danger to the child, now and in the future;
- the parenting abilities of the parties seeking custody;
- the programs available to assist the party seeking custody;
- the plans for the child by the parties seeking custody;
- the stability of the home or the proposed placement;
- the parent's acts or omissions that reveal the existing parent-child relationship is improper; and
- any excuse for the parent's acts or omission.

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

[11]Tex. Fam. Code. Ann. § 153.193.

During the hearing, the trial court heard testimony from several witnesses who said that Zeke had been abused by a man when Zeke lived with Zeke's mother. The CPS supervisor assigned to Zeke's case testified in the hearing that she noticed Zeke cried when Mark saw Zeke when Mark he was carrying out the requirements of his court-ordered family service plan. Zeke was apparently uncomfortable with others, including Mark, because according to the CPS supervisor Zeke "didn't feel comfortable with . . . people that he didn't have a relationship with. [Zeke] just had security issues and didn't feel comfortable with various people, which included CPS at that time." According to the CPS supervisor, there was not a bond established between Mark and Zeke, and she thought it best that Mark's visits be supervised until Zeke becomes comfortable with Mark.

Tina and Ray testified they began taking care of Zeke when he was ten-months old. They explained that he still had signs of injury from being abused when he was placed in their home. Tina testified: "I just don't understand why [Zeke] has not bonded with [Mark], and it could be. I just don't understand there's no bond. We have—he bonds with caseworkers. He bonded with his lawyer. It's just no bonding." Tina

testified she and Ray worked with CPS so that Zeke could bond with Mark; however, she described Mark's response to her efforts as "lackadaisical" explaining that Mark did not seem excited about spending more time with Zeke. And when Mark came for an additional visit on one occasion on Zeke's first birthday, she noticed that Mark failed to focus on Zeke when he was there. According to Tina, when Zeke did visit with Mark, Zeke had bad dreams at night when Mark left, and on occasion Zeke became angry when he was in school and fought with other children.

Mark, however, testified that he did have a bond with Zeke. Yet Mark agreed that Zeke also had bonded with Tina and Ray in a healthy way. Mark also expressed gratitude for the fact that Tina and Ray had been willing to parent his child.

The record contains conflicting evidence on the question of whether Mark's visits with Zeke should be supervised. Under Texas law, the trial court was obligated to "render an order appropriate under the circumstances for possession of a child less than three years of age" given Zeke's age when the hearing occurred.[12] And as the court of continuing

---

[12]*See* Tex. Fam. Code Ann. § 153.253 (Standard Possession Order Inappropriate or Unworkable).

exclusive jurisdiction, the trial court could modify the order on a future date, which Mark acknowledged in the settlement hearing before approving the settlement Mark made on the issue of possession (but not access).[13]

The five witnesses who testified in the hearing addressed many of the factors described in *Holley*, focusing on Zeke's emotional needs, the parenting abilities of Tina, Ray, and Mark, the stability of Zeke's placement, the role Mark played in the failure to bond, and the excuse Mark offered to explain any alleged deficiencies in his bond with Zeke.[14] The trial court's conclusion requiring Mark's visits with Zeke to be supervised is reasonable given Zeke's age, his past history, and the evidence addressing the remaining *Holley* factors the evidence addressed during the hearing.[15]

---

[13]*See* Tex. Fam. Code Ann. § 161.001. During the settlement hearing, Mark's attorney asked Mark: "Q: Do you understand that with you still in this child's life at future dates you could attempt to modify this court order with [Tina and Ray]?" Mark answered: "Yes."

[14]*Holley*, 544 S.W.2d at 371-72.

[15]*See In re E.R.A.*, 2021 Tex. App. LEXIS 2026, at *11.

## Conclusion

Since the access order the trial court rendered is appropriate under the circumstances for a child less than three-years-of-age, we overrule Mark's issues. The trial court's final order is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 21, 2022
Opinion Delivered July 14, 2022

Before Golemon, C.J., Horton and Johnson, JJ.

13